GEORGE G. FOX COMPANY *vs.* WILLIAM I. GLYNN & others.

Suffolk. January 22, 23, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Unfair Competition.   Trade Name.   Equity Jurisdiction,* To restrain unfair competition.

In a suit in equity by one wholesale baker against another to enjoin the defendant from selling any bread as "Creamalt" bread, from selling any malt bread in a loaf of oval shape in imitation of the plaintiff's loaf, and from using the name "Crown Malt," it was found by a master that the plaintiff had originated a kind of bread in which milk and malt were combined, and to identify it before the public made it in oval loaves of distinctive size, shape and surface and had coined and adopted the word "Creamalt" as a trade name, also registering it in the office of the secretary of the Commonwealth as a trademark, that each loaf bore the plaintiff's trademark printed in blue ink upon a white label, that the bread became popular and the "Creamalt" branch of the plaintiff's business was its most valuable part and of great value, that the defendant, with a fraudulent intent to appropriate the benefit of the public demand for the plaintiff's bread, adopted the name "Crown Malt" and affixed to each loaf a white label on which the words "Crown Malt" were printed in blue ink, and adopted also

an oval loaf in imitation of the plaintiff's loaf, imitating also the peculiarity of surface of the plaintiff's loaf produced by a steam glaze. The master found as a fact that the words "Crown Malt" bore such a close resemblance to the plaintiff's trade name and trademark "Creamalt" as to be likely to promote frauds by dealers and mislead the public, and that the "Crown Malt" loaves of the defendant had been "palmed off" as the "Creamalt" bread of the plaintiff. He also found that the defendant's legitimate business could be conducted properly without giving his loaves this distinctive misleading appearance. *Held,* that the plaintiff was entitled to an injunction, the terms of which would be fixed by a single justice, and to an assessment of damages.

In a suit in equity by one wholesale dealer against another to restrain unfair competition in trade consisting of an imitation of the plaintiff's trade name and of the appearance of his goods, it is no defence that the defendant does not mislead or intend to mislead the retail dealers to whom he sells, if he knowingly places in the hands of the retail dealers an instrument of fraud with which they may deceive the public.

BILL IN EQUITY, filed May 10, amended by a substituted bill filed by consent on June 20, 1905, to restrain the defendants William I. Glynn, a retail dealer, and William R. McKenzie and William R. Connor, copartners doing business under the name of the Sanderson Baking Company, of whom the defendant Glynn was a customer, from making, offering, exposing or selling any bread as and for "Creamalt" bread; from making, exposing or selling any malt bread in a loaf of an oval shape similar to the plaintiff's loaf, unless such bread was made by the plaintiff; from using the name "Crown Malt" or any other name similar to the plaintiff's trade name "Creamalt" upon labels, signs, or advertisements, or from using any name in any way calculated to cause the defendants' bread to be mistaken by purchasers for the plaintiff's bread; praying also for an assessment of damages and for further relief.

The case was heard by *Morton,* J. upon the pleadings, a master's report and the exceptions thereto. He overruled the exceptions, and ordered that an interlocutory decree be entered for the plaintiff. The defendants McKenzie and Connor appealed; and the justice, being of the opinion that the interlocutory decree so affected the merits of the controversy that the questions raised by the appeal should be determined by the full court, reported the questions so raised for such determination, and ordered a stay of further proceedings in the case, except that the temporary injunctions issued and ordered to be issued should remain in full force and effect.

*O. Mitchell,* (*J. T. Brennan* with him,) for the plaintiff.

*J. W. Keith,* (*E. D. Sibley* with him,) for the defendants, McKenzie and Connor.

KNOWLTON, C. J. The plaintiff corporation is a wholesale baker, and it brings this bill against a retail baker and a firm of wholesale bakers, alleging unfair competition in trade by the defendants against the plaintiff, and infringements of the plaintiff's registered trademark. The bill avers that the plaintiff originated a new kind of bread, in which milk and malt were combined, and that, in order to identify it before the public, it adopted distinctive features of shape, size, proportion and condition of surface, resulting in a distinctive visual appearance. For this novel bread the plaintiff coined and adopted the word " Creamalt " as a trade name, and registered it in the office of the secretary of the Commonwealth as a trademark. The plaintiff's loaf bore the plaintiff's trademark, printed in blue ink upon a label of a certain size and color. The alleged unfair competition of the defendants consists in the manufacture and sale of a loaf of bread under the name " Crown Malt ", which is practically identical in its visual appearance with the plaintiff's " Creamalt " loaf. The master found the above facts, and, among others, made further findings as follows : " This ' Creamalt ' bread was steam glazed ; that is to say, the bread was baked in an oven into which live steam was injected during the process of baking, with the result that the upper surface of the bread to a slight depth was chemically affected, the starch therein being converted into dextrine, with the result that the surface became glazed and crackled in appearance. On each and every ' Creamalt ' loaf there was affixed a small white label printed in blue ink and bearing the name ' Creamalt', and the words ' Made with milk and malt, George G. Fox Company, Charlestown '; . . . that prior to said date, to wit, January 1, 1904, there was no bread of any kind known as ' Creamalt '; that there was no bread in this market advertised or known to the public to contain milk and malt; that there was no bread commercially successful containing milk and malt; . . . that there was no bread made having the distinctive visual appearance adopted by the complainant; that the peculiar shape of ' Creamalt ' bread is uneconomical from the standpoint of the consumer for the reason

that it does not cut in uniform slices; . . . that the complainant extensively advertised its 'Creamalt' bread by circulars, . . . and that said bread quickly became popular; . . . that all 'Creamalt' bread made and sold by the complainant has the distinctive visual appearance shown in Exhibit B; and that all such loaves were steam glazed and had 'Creamalt' labels affixed; that the 'Creamalt' branch of the business is the most valuable part of its business, and is of large value; . . . that the public and the trade call for the complainant's bread either by the name 'Creamalt' or by asking for 'the oval loaf' and have learned to recognize the complainant's 'Creamalt' bread as 'Creamalt' bread by its general visual appearance; . . . that about the first of October, 1904, the defendants McKenzie and Connor placed on the market, being practically the same market as that of the complainant, an oval loaf of white bread identical in size, shape, proportions and general visual appearance with the bread of the complainant, except that no label was affixed to the loaves, and except as to the glaze, which was a cornstarch wash slightly different in effect from the steam glaze, consequent upon the fact that it had no chemical action upon the surface of the bread and gave no crackle; that in December, 1904, McKenzie and Connor began to use a steam glaze on their bread; that in January, 1905, they adopted the name 'Crown Malt' for their bread; that beginning in May, 1905, and continuously since, they have affixed to each and every loaf of their 'Crown Malt' bread a small white label printed in blue ink, bearing the words 'Crown Malt made only by Sanderson Baking Company' and a pictorial representation of a crown; . . . that at the time of placing their oval loaf on the market said McKenzie and Connor knew of the complainant's distinctive loaf and made their 'Crown Malt' oval loaf in imitation of the complainant's 'Creamalt' loaf, and in response to a demand caused by the sale of the complainant's 'Creamalt' loaf, and that the changes the defendants McKenzie and Connor have made since first placing their oval loaves on the market have tended to increase the similarity of their loaf to the loaf of the complainant; and I find from such gradual approximation, and from all the evidence in the case, that said defendants had a fraudulent intent to appropriate to themselves the benefit of the public demand for the complainant's novel and

visually distinctive loaf; . . . that the 'Crown Malt' oval loaf of the defendants McKenzie and Connor has been substituted and palmed off as and for the 'Creamalt' bread of the complainant by the defendant Glynn and other dealers to whom the defendants McKenzie and Connor sold their 'Crown Malt' bread; . . . that the trade name and trademark 'Crown Malt' is so similar to the trade name and trademark 'Creamalt' in connection with a loaf of bread, as to be likely to create confusion, mislead the public and render easy substitution by dealers, and that the complainant's trade name and trademark 'Creamalt' have been infringed by McKenzie and Connor's use of the trade name and trademark 'Crown Malt'; . . . that the 'Creamalt' loaf of the complainant is novel and distinctive; that the demand of the public for this bread was created by the complainant, and that the shape, proportions and color have come to be principally, if not exclusively, relied upon by ordinary purchasers as the means of identifying the complainant's 'Creamalt' bread, and that the oval loaf put out by the defendants amounts to a representation to the consuming public that the defendants' oval loaf is the complainant's 'Creamalt,' loaf; . . . that the defendants McKenzie and Connor, having knowledge of the fact that their bread was and had been sold by the defendant Glynn and others as and for the bread of the complainant, continued to make and sell their oval loaf and stand upon their right; that there is no necessity for the defendants McKenzie and Connor to make their bread of the peculiar and distinctive appearance of the complainant's 'Creamalt' bread apart from the desire to benefit by the demand created by the complainant for its 'Creamalt' bread, and said defendants can and do successfully make and sell their bread in another shape."

These findings show that the plaintiff has a valuable good will in the business of manufacturing and selling this peculiar kind of bread. This good will is property, and is a valuable asset in the plaintiff's business. For cases recognizing property in good will, see *Cruttwell* v. *Lye*, 17 Ves. 335; *Hitchcock* v. *Coker*, 6 Ad. & El. 438; *Knott* v. *Morgan*, 2 Keen, 213; *Potter* v. *Commissioners of Inland Revenue*, 10 Exch. 147; *Wedderburn* v. *Wedderburn*, 22 Beav. 84; *Griffith* v. *Kirley*, 189 Mass. 522; *Hutchinson* v. *Nay*, 183 Mass. 355; *S. C.* 187 Mass. 262; *Moore*

v. *Rawson*, 185 Mass. 264; *Crossman* v. *Griggs*, 186 Mass. 275.
For cases recognizing the right in connection with a trademark,
trade name, or other designation of origin, see *American Waltham
Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Flagg
Manuf. Co.* v. *Holway*, 178 Mass. 83; *Samuels* v. *Spitzer*, 177
Mass. 226; *Marsh* v. *Billings*, 7 Cush. 322; *Hildreth* v. *McDonald Co.* 164 Mass. 16; *Russia Cement Co.* v. *LePage*, 147 Mass.
206; *Viano* v. *Baccigalupo*, 183 Mass. 160; *Regis* v. *Jaynes*, 185
Mass. 458, 463; *Cohen* v. *Nagle*, 190 Mass. 4.

This good will is connected with and dependent upon the use
of the name " Creamalt" and the combination of features in the
manufacture of the bread which give it a distinctive visual
appearance unlike that of any other bread in the market. These
indicate the place of manufacture of the loaves as they are sold,
and give them a peculiar value in the market. The right to
have the benefit of the reputation of its products, which are
designated as above, is important to the plaintiff, and it is a
right of property which the courts will guard as carefully as it
would visible, tangible property. This right necessarily includes
a right to the use of the trade name, trademark or other proper
designation of its bread, thus acquired by appropriation and
public recognition. Any one who attempts to deprive one of
such a right, by palming off goods of his own manufacture for
others which have acquired a valuable reputation, is a wrong-
doer whose fraudulent attempt will subject him to the restraining
and retributive orders of the court.

The practical difficulties which arise in such cases come from
conflicting rights, where the plaintiff's right to use his chosen
means of designation of his products is not exclusive. One way
of designating articles of manufacture as coming from a particu-
lar maker is by a trademark. This, to be an effectual protection
to one who has adopted and used it, must be something to which
the user may have an exclusive right. It therefore cannot be any-
thing to the use of which, for a similar purpose, others may also
have a right. The courts will not recognize trademarks which
are not chosen in such a way as not to conflict with the rights of
others to use common names and things, like the names of persons
and places, and of colors and forms with which all are familiar.

But goods often come to be known as of a particular manufac-

ture, and acquire a valuable reputation, by means of a designation that could not be made the subject of a trademark, because others may have occasion to make some use of the words or marks chosen. It is important to every one who has acquired a valuable good will in his business in that way, to have it protected, as his other property is protected. It is also important to the public to be able to recognize articles of manufacture as produced by a known and trustworthy maker, through the appearance by which they have come to be known. The courts therefore have two reasons for recognizing and protecting trade names, and other similar means of designation, whenever they accompany articles of manufacture. One is to save to the manufacturer the benefit of the good will which belongs to his products through the use of the trade name or other designation, and the other is to protect the public from frauds that might be practised by the sale of imitations. The foundation of the jurisdiction of the courts in these cases is the right of the plaintiff, who asks for relief from the frauds of those who seek to appropriate that which rightfully belongs to him. Such a fraud need not be an active fraud in any other sense than in the wilful refusal to recognize the right of the party, who has acquired a reputation for his goods, to have the benefit of the confidence which he has earned.

If the plaintiff in such a case has acquired for his manufactures a valuable reputation in the community, in connection with a trade name, or with other peculiarities by which they are known, and if the defendant has no right that will be interfered with to his detriment by a protection of the plaintiff's rights, the result is easily reached. The defendant is enjoined from any use of the name or other indications of origin employed by the plaintiff. If some of these names or indications belong to the public, for any proper use, and the defendant has an interest to employ them, it becomes necessary to give the case such a direction, if possible, as will enable each so to enjoy his right as not to interfere with the right of the other. If that is not possible, their rights. must be adjusted on equitable principles, having proper regard to the interests of both. The cases in which the plaintiff can have no relief are those in which the right of the defendant to the use of the name is as important as the right of the plain-

tiff to have all the benefits, pertaining to his business, which he seeks to retain. In such a case the defendant does not fraudulently or wrongfully appropriate the plaintiff's property, although he may obtain an advantage from the good reputation of the plaintiff's products. Cases showing the general right of a manufacturer to protection in a case like the present are the following: *Knott* v. *Morgan*, 2 Keen, 213; *Garrett* v. *Garrett*, 78 Fed. Rep. 472; *Reddaway* v. *Banham*, [1896] A. C. 199, 204; *Saxlehner* v. *Apollinaris Co.* [1897] 1 Ch. 893, 899; *Baker* v. *Baker*, 77 Fed. Rep. 181; *Anheuser-Busch Brewing Assoc.* v. *Clarke*, 26 Fed. Rep. 410; *Von Mumm* v. *Frash*, 56 Fed. Rep. 830; *Cook & Bernheimer Co.* v. *Ross*, 73 Fed. Rep. 203; *Weinstock* v. *Marks*, 109 Cal. 529; *Hildreth* v. *McDonald Co.* 164 Mass. 16; *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154; *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Samuels* v. *Spitzer*, 177 Mass. 226; *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83; *Viano* v. *Baccigalupo*, 183 Mass. 160; *Cohen* v. *Nagle*, 190 Mass. 4. The foundation of the plaintiff's right is the fact that the combination of name, size, shape and condition of surface, producing a peculiar visual appearance, were all adopted by the plaintiff when not in use by any one else, and are such a combination as no one else needs to use. The shape is found to be unusual, and uneconomical for cutting. The general right of the defendants, to use any size or shape or condition of surface that they choose does not give them a right to adopt a combination of these, which will mislead the public, to the plaintiff's detriment and their own advantage. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Reddaway* v. *Banham*, [1896] A. C. 199. *Saxlehner* v. *Apollinaris Co.* [1897] 1 Ch. 893, 899. *Enterprise Manuf. Co.* v. *Landers*, 131 Fed. Rep. 240. *Putnam Nail Co.* v. *Bennett*, 43 Fed. Rep. 800. *Buck's Stove & Range Co.* v. *Kiechle*, 76 Fed. Rep. 758. *Sterling Remedy Co.* v. *Spermine Medical Co.* 112 Fed. Rep. 1000. *Globe-Wernicke Co.* v. *Brown*, 121 Fed. Rep. 90. *Elliott* v. *Hodgson*, 19 Rep. Pat. Cas. 518. *Weinstock* v. *Marks*, 109 Cal. 529. *Cohen* v. *Nagle*, 190 Mass. 4. If it were necessary for them to adopt such a combination, it could only be permitted, after the plaintiff had acquired a valuable reputation in connection with it, on condition that it

be accompanied by a designation or statement plainly showing that the defendants' bread was not of the plaintiff's manufacture. *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85. *Weinstock* v. *Marks,* 109 Cal. 529. *Garrett* v. *Garrett,* 78 Fed. Rep. 472, 478. The difference between the right to the use of a trade name or other similar designation acquired in this way, and a technical trademark, is that, while the trade name or other designation, like a trademark, is attached to the manufactured article, and accompanies it in the market, it may be of such a kind as not to make the right exclusive. But the findings of the master show that the defendants' legitimate business can be conducted properly without giving their loaves this distinctive, misleading appearance.

It is not true that the wholesale dealers can successfully defend on the ground that they do not mislead or intend to mislead the retail dealers to whom they sell. It is enough to require an injunction, if they knowingly place an instrument of fraud in the hands of a retailer, with which he may deceive the public. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Fairbank Co.* v. *Bell Manuf. Co.* 77 Fed. Rep. 869. *Hostetter Co.* v. *Becker,* 73 Fed. Rep. 297. *Fairbank Co.* v. *Luckel Co.* 102 Fed. Rep. 327. *Lever* v. *Goodwin,* 36 Ch. D. 1.

The master's finding that the words " Crown Malt " bear such a close resemblance to the plaintiff's trade name and trademark " Creamalt " as to be likely to promote frauds by dealers, and mislead the public, is a finding of fact which must stand unless it is plainly wrong. The evidence on which the finding was made is not all before us. It does not appear that the finding is wrong. The defendants cannot suffer seriously from it, as the word " Creamalt " was coined by the plaintiff as a name for its bread, and there is nothing to show that there was any reason for the adoption by the defendants of the name " Crown Malt ", except its similarity to the name adopted by the plaintiff.

In view of what we have stated, it is unnecessary to consider the defendants' exceptions particularly. Many of them are to findings of fact by the master, upon evidence which is not reported.

The plaintiff is entitled to an injunction, the terms of which will be fixed by a single justice, and to an assessment of damages.

*Decree accordingly.*