ESSELSTYN, APPELLANT, *v.* HOLMES, RESPONDENT.

(No. 2,924.)

(Submitted December 24, 1910. Decided January 24, 1911.)

[114 Pac. 118.]

*Goodwill—Trade Marks and Names—Exclusive Enjoyment—Injunction—Implied Findings—Assignment of Errors—Briefs.*

Findings—When Implied.
    1. Where the court's findings are general in terms, any finding not specifically made but necessary to support the judgment, will be implied.

Appeal—Assignment of Errors—Briefs.
    2. Errors not assigned in appellant's brief will not be considered.

Goodwill—Exclusive Enjoyment.
    3. The goodwill of a business is property capable of transfer, and the owner thereof is entitled to the same protection in its exclusive enjoyment as he is in that of his tangible possessions.

Trade Names—When not Subject to Exclusive Enjoyment.
    4. Though, upon principles analogous to those which apply to technical trademarks, a person may be protected in the exclusive use of his own name, or that of a place, building or other designation selected by him and by use of which, in connection with his business, he has acquired for it a valuable goodwill, names which are generic or merely

descriptive of an article of trade, or geographical names designating certain districts of country, are not subject to exclusive appropriation for such purpose.

Same—Exclusive Use—Injunction.

5. *Held,* that the district court properly refused to enjoin the defendant from using the trade name "Owl Creek Coal" in the sale of coal which the court found was mined, in common with that dealt in by plaintiff, in a region of country known as the owl creek coal field, which name had not, by long association with plaintiff's coal business, acquired a peculiar or secondary meaning.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by E. E. Esselstyn to enjoin George B. Holmes from using a certain trade name in the sale of coal handled by him. Defendant had judgment, and plaintiff appeals. Affirmed.

*Mr. C. A. Spaulding,* in behalf of Appellant, submitted a brief, and argued the cause orally.

A competitor in trade will be enjoined from using a name or designation for a product which had theretofore been adopted and used by another, and under which a business had been built up and a demand created for such product under such designation. Injunctive relief in such a case is granted under the principle that it is a fraud for such competitor to use such trade name to induce the public to believe that his product is that of the person first adopting the same, and not at all because the person seeking relief has a valid technical trademark. (*Fox Co.* v. *Glynn,* 191 Mass. 344, 114 Am. St. Rep. 619, 78 N. E. 89, 9 L. R. A., n. s., 1096; *Coates* v. *Merrick etc. Co.,* 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; *Von Mumm* v. *Frash,* 56 Fed. 830; *Saxlehner* v. *Eisner,* 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; *Sperry* v. *Percival M. Co.,* 81 Cal. 252, 22 Pac. 651; *Scriven* v. *North,* 134 Fed. 366, 67 C. C. A. 348.)

It also no longer admits of doubt that a court of equity will enjoin the subsequent use of a trade name, under which a profitable business has developed, whether the name be one susceptible of exclusive appropriation as a technical trademark or not. (*International etc. Co.* v. *Rogers,* 66 N. J. Eq. 119, 57 Atl. 1037, 2 Ann. Cas. 407; *Gato* v. *El Modello etc. Co.,* 25 Fla. 886, 23

Am. St. Rep. 537, 7 South. 83, 6 L. R. A. 823; *Putnam Nail Co.* v. *Bennett,* 43 Fed. 800; *Elgin etc. Co.* v. *Illinois etc. Co.,* 89 Fed. 487; *Shaver* v. *Heller & Merz Co.,* 108 Fed. 821, 48 C. C. A. 48; *Weinstock etc. Co.* v. *Marks,* 109 Cal. 529, 50 Am. St. Rep. 57, 42 Pac. 142, 30 L. R. A. 182; *American W. Watch Co.* v. *United States Watch Co.,* 173 Mass. 85, 73 Am. St. Rep. 263, 53 N. E. 141, 43 L. R. A. 826; *Pillsbury etc. Co.* v. *Eagle,* 86 Fed. 608, 41 L. R. A. 162, 30 C. C. A. 386; *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380, 78 Pac. 879; *Lynn Shoe Co.* v. *Auburn Shoe Co.,* 100 Me. 461, 62 Atl. 499, 4 L. R. A., n. s., 960.)

Respondent's sole contention in the court below was that the name adopted by appellant for his coal was geographical in character and hence not susceptible of exclusive appropriation as a trade name. But even as to a strictly geographical name equity will protect one in the exclusive use of it as a trade name, if by reason of such use it has acquired a secondary signification, and in the mind of the public stands for a particular product rather than the particular place where such product is produced. (*American W. Watch Co.* v. *United States Watch Co.,* 173 Mass. 85, 73 Am. St. Rep. 263, 53 N. E. 141, 43 L. R. A. 826; *Globe-Wernecke Co.* v. *Brown,* 121 Fed. 185; *Elgin etc. Co.* v. *Illinois etc. Co.,* 89 Fed. 487; *Drake Medicine Co.* v. *Glessner,* 68 Ohio St. 337, 67 N. E. 722; *Pillsbury etc. Co.* v. *Eagle,* 86 Fed. 608, 41 L. R. A. 162, 30 C. C. A. 386; *Gage-Downs Co.* v. *Featherbone Co.,* 83 Fed. 213; *Buzby* v. *Davis,* 150 Fed. 275, 80 C. C. A. 163, 10 Ann. Cas. 68.) Upon the proposition of a slight change in a trade name being an insufficient answer to a suit to restrain such modified user, see *Saxlehener* v. *Eisner Co.,* 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; *Enoch Morgan Co.* v. *Whittier-Coburn Co.,* 118 Fed. 657; Hopkins on Unfair Trade, p. 195, *et seq.*

The actual motive or intent of defendant is immaterial, if his acts were such as would tend naturally to deceive the public and bring about damage to business. (*Nesne* v. *Sundet,* 93 Minn. 299, 106 Am. St. Rep. 439, 101 N. W. 490, 3 Ann. Cas. 30; *Devlin* v. *McLeod,* 135 Fed. 164; *Bissell Chilled Plow Works*

v. *T. M. Bissell Plow Co.,* 121 Fed. 357; *Eureka Fire Hose Co.*
v. *Eureka Rubber Mfg. Co.,* 69 N. J. Eq. 159, 60 Atl. 561; *Van
Houten* v. *Hooton Cocoa & Chocolate Co.,* 130 Fed. 600; *Van
Stan's Stratena Co.* v. *Van Stan,* 209 Pa. 564, 103 Am. St. Rep.
1018, 58 Atl. 1064; *International Silver Co.* v. *Rogers Corp.,* 66
N. J. Eq. 119, 57 Atl. 1037, 2 Ann. Cas. 407; *Von Munm* v.
*Frash,* 56 Fed. 830; *McLean* v. *Fleming,* 96 U. S. 245, 24 L. Ed.
828; *Southern etc. Co.* v. *Cary,* 25 Fed. 125.)

*Mr. W. T. Pigott* submitted a brief in behalf of Respondent,
and argued the cause orally.

The statutes of Montana deny to appellant the right to a trade
name such as the one here in question (Revised Codes, secs. 2036,
4565; *Whittier* v. *Dietz,* 66 Cal. 78, 4 Pac. 986; *Woodcock* v.
*Guy,* 33 Wash. 234, 74 Pac. 358), and hence appellant's con-
tentions must be tested, and stand or fall, by the rules of the
common law. "Owl Creek" is a geographical name by which
a certain stream in Wyoming is known. It is also the name of
the place, field, region, or district through which the stream of
that name flows. "Coal" is a generic name descriptive in char-
acter and purpose. It cannot be appropriated as a trade name
or mark. "Owl Creek" is the name both of a stream of water
and of a locality or region—hence is not an arbitrary or fan-
ciful name. It is also simply descriptive. It cannot be appro-
priated by anyone as a trade name or mark. The rule prevent-
ing "coal" from being exclusively appropriated applies with
equal reason to "Owl Creek." For coal is no more essentially
descriptive than is "Owl Creek"—"coal" denoting the generic
article, "Owl Creek" denoting the place or locality (either
stream or region) of its production, and the two together con-
noting coal from Owl creek, either from the vicinity of the
stream or from the region or place. The common law denies
the existence of such right. The leading case upon the subject
is *Delaware & Hudson Canal Co.* v. *Clark,* 13 Wall. 311, 20 L.
Ed. 581, the principles of which have been followed in well-nigh
countless subsequent cases. The opinion in that case covers

all of the points which appellant has made, or can make, upon the facts shown in the case at bar.

Equity will not enjoin a man from telling the truth as to the place where his merchandise was produced. In *Castner* v. *Coffman,* 178 U. S. 167, 20 Sup. Ct. 842, 44 L. Ed. 1021, the decision was that the use of the name "Pocahontas Coal" by the selling agents for the owners of coal mined near a town called Pocahontas, did not create an exclusive right in the agents to use that name for coal from that field, nor deprive other owners of mines there of the right to use the name for their coal. *Canal Co.* v. *Clark, supra,* has been approved in *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; in *Goodyear Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; in *Corbin* v. *Gould,* 133 U. S. 308, 10 Sup. Ct. 312, 33 L. Ed. 611; and in *Brown Chemical Co.* v. *Meyer,* 139 U. S. 543, 11 Sup. Ct. 625, 35 L. Ed. 247. *Elgin National Watch Co.* v. *Illinois Watch Case Co.,* 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365, reaffirms *Canal Co.* v. *Clark, supra;* as do *Columbia Milling Co.* v. *Alcorn,* 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; the *French Republic* v. *Saratoga Vichy Springs Co.,* 191 U. S. 421, 441, 24 Sup. Ct. 145, 48 L. Ed. 247, and *Howe Scale Co.* v. *Wyckoff,* 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972. The last-cited case is to the effect that one may always use his own name without impinging upon the rights of others, where the only confusion in the minds of the public as to the origin of the things produced by two men engaged in the same business results from a similarity in names, and not from the manner of their use. (See, also, *Evans* v. *Von Laer,* 32 Fed. 153, an instructive case.)

All cases of unfair trade (as distinguished from those involving protection of technical trade marks or names) rest upon the basis of fraud. An essential element is fraudulent intent, either express or implied. Some artifice or deception must be employed which tends to mislead buyers. Truthfully to designate a natural product, such as coal, or stone, or fruit, by the name of the region where it was found, has never been denounced as unfair.

These principles are in entire harmony with the rule—which appellant ignores—that (to put the matter concretely) when A has created a valuable trade for his wares produced or made at a particular place or in a particular region, and identified them by the geographical name of the place or region, B will be enjoined from using the same name for his wares produced or made elsewhere, for the purpose of diverting the trade to himself. This is a fraud upon the public and upon A. Such was the condition in *Newman* v. *Alvord,* 51 N. Y. 189, 10 Am. Rep. 588, 593; in *Pillsbury-Washburn Co.* v. *Eagle,* 86 Fed. 608, 41 L. R. A. 162, 30 C. C. A. 386; so in *California Fruit Assn.* v. *Meyer,* 104 Fed. 82, and in *Gage-Downes Co.* v. *Corset Co.,* 83 Fed. 213, and likewise in *Southern White Lead Co.* v. *Coit,* 39 Fed. 492.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to have a determination of the question whether the plaintiff is entitled to the exclusive use of the words ''Owl Creek Coal,'' as a trade name for the coal mined by the Owl Creek Coal Company and sold by the plaintiff to the public in the city of Helena and vicinity. The Owl Creek Coal Company began to mine coal in the Bighorn Basin, in the state of Wyoming, some time prior to September 1, 1908. About the same time the Kirby Coal Company also began to mine. At that time the plaintiff became the agent of the company, with the exclusive right to sell its product in the states of Montana and Washington. No special effort had theretofore been made to get the product of either company upon the market in these states. The plaintiff provided himself with docks and yards in the cities in Montana, including Helena, and since that time has been advertising and selling the product as ''Owl Creek Coal.'' It is alleged in the complaint, in substance, that in order to distinguish the product of the company so handled by him from the product of mines other than those belonging to it, the plaintiff adopted the trade name and designation ''Owl

Creek Coal''; that he has at great expense advertised and put
the coal upon the market under this designation; that after
its adoption he was in the quiet and exclusive enjoyment of
said trade name, as applied to the coal handled and sold by
him; that on April 27, 1909, he filed with the secretary of state
of Montana his claim to the exclusive use of the name, duly
verified as required by law; that because of the superior quality
of the product sold by him it became identified and known by
this name in the city of Helena and its vicinity, and because
of this fact plaintiff built up a lucrative business, deriving a
large profit from it; that notwithstanding these facts and plain-
tiff's rights in the premises, the defendant, with the precon-
ceived intention of defrauding the plaintiff out of his profits and
of securing to himself the benefit of the reputation acquired for
the ''Owl Creek Coal'' by palming off upon the public a coal
of inferior quality, has, since about January 1, 1909, continu-
ously used plaintiff's said trade name, and is now using it for
the purpose of soliciting trade by representing to purchasers,
by advertisement, that he is selling the same kind and quality
of coal as that which the plaintiff has the exclusive right to sell,
though in fact it is much inferior in quality; that he has thus
deceived the public in Helena and vicinity, and greatly injured
and damaged the reputation and estimation in which the coal
sold by plaintiff has been held; that plaintiff cannot ascertain
with any exactness the amount of injury he has sustained, and
that the defendant is wholly insolvent. The prayer is for a
perpetual injunction.

The answer admits that plaintiff has been for more than a
year the sole agent of the Owl Creek Coal Company; that for
some time prior to the filing of the complaint he, in common
with other dealers in the city of Helena and vicinity, have used
the name ''Owl Creek Coal'' as the name of certain of the coal
sold by the defendant and other dealers in the same territory,
and that defendant is insolvent. It denies all other allegations
contained in the complaint. It is then affirmatively averred
that the coal in which defendant has dealt as ''Owl Creek Coal''

is produced in the Owl creek field, in the state of Wyoming; that it has been and is named "Owl Creek Coal" because it is mined and produced near a stream called Owl creek, and in the Owl creek field, and is in fact Owl creek coal; that "Owl creek" is the name of a stream in said district, and also of a range of mountains near by, and that the expression "Owl Creek" is a generic and geographical name; that this coal is of a similar quality and of the same general appearance as that dealt in by the plaintiff and is as truly described by the designation "Owl Creek Coal" as is that dealt in by plaintiff; that it is produced at a less distance from Owl creek than that sold by plaintiff, and the designation "Owl Creek Coal" does not point to the ownership of the coal, nor indicate in any degree the person, natural or artificial, who mined it or brought it to market; that the defendant has dealt in said coal and sold it as one mined near to Owl creek by the Kirby Coal Company, within the Owl creek region or field; that the generic and comprehensive name for all coal mined in that region or district, is "Owl Creek Coal," and that there are at least two collieries now in operation in that district, the product of both of which is truly and rightfully described as "Owl Creek Coal." The replication admits that plaintiff's coal is mined near Owl creek in the state of Wyoming, but denies all the other affirmative allegations in the answer. The court found generally for the defendant and directed judgment to be entered dismissing the action. The plaintiff has appealed.

It is not important in this case to inquire into the question whether a person may secure the exclusive right to the use of a trade name, as distinguished from a trademark, by a compliance with the provisions of the Codes (Revised Codes, secs. 2036, 2040), or whether the plaintiff has complied with them. The case proceeds upon the theory that the defendant has been engaged in an attempt to secure to himself the benefit of the goodwill which the plaintiff has acquired, as the exclusive agent of the Owl Creek Coal Company, for the sale of the coal produced by it. In other words, the cause of action alleged—and for the purposes of this case we shall assume that sufficient facts

appear upon the face of the complaint to require a defense—
is for relief from the injury resulting from a course of unfair
competition by the defendant. Nor are we required to enter
into the inquiry whether the evidence is sufficient to justify the
findings. No attack is made upon them by appellant. The
assignment of error in the brief is, that "the court erred in ren-
dering judgment against appellant and in favor of respondent."
This presents only the question whether, upon the facts as found,
the trial judge reached the proper conclusion; for, though the
findings are not specific, but in general terms, every finding upon
any issue necessary to support the judgment is to be implied.
(*Thorp* v. *Freed*, 1 Mont. 651; *Ingalls* v. *Austin*, 8 Mont. 333,
20 Pac. 637; *Haggin* v. *Saile*, 23 Mont. 375, 59 Pac. 154; *Currie*
v. *Montana Cent. Ry. Co.*, 24 Mont. 123, 60 Pac. 989; *Slater
Brick Co.* v. *Shackleton*, 30 Mont. 390, 76 Pac. 805; *Bordeaux*
v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6.) This rule is in effect
declared by the statute (Revised Codes, sec. 6766). Further-
more, this court has uniformly observed the rule that it will
not consider alleged errors not assigned in appellant's brief.
(*Lehane* v. *Butte Electric Ry. Co.*, 37 Mont. 564, 97 Pac. 1038;
*Foster* v. *Winstanley*, 39 Mont. 314, 102 Pac. 574; *Toole* v.
*Weirick*, 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590;
*Watkins* v. *Watkins*, 39 Mont. 367, 102 Pac. 860.)

Under the issues made by the pleadings, the court necessarily
found that at the time the action was brought, the plaintiff, in
common with others, including the defendant, were selling coal
which is designated as "Owl Creek Coal"; that the coal dealt
in by the plaintiff and defendant under this designation is pro-
duced in the Owl creek coal field, in the state of Wyoming; that
it has been and .is designated as "Owl Creek Coal" because of
this fact; that defendant's coal is similar in appearance and
quality to that dealt in by the plaintiff; that the designation is
truthful as applied to the coal sold by the defendant; that it
does not point to the ownership of the coal nor to the person
who mines it or puts it upon the market; that the defendant
has dealt in it as coal mined near Owl creek by the Kirby
Coal Company; that the designation is a geographical and com-

prehensive one and is applicable to all coal mined in that district; and that there are at least two collieries in the district producing coal the product of both of which is truly and rightfully called "Owl Creek Coal."

It cannot be doubted that upon principles analogous to those which apply to technical trademarks, a person may be protected in the exclusive use of his own name or that of a place, building or other designation selected by him and by use of which, in connection with his business, he has acquired for it a valuable goodwill. The theory of the law is that, while all are entitled to the use of any given designation, no one has the right to so use it, even though it is his own name or a name selected for his place of business, as to invade the right of another. Such conduct is a distinct fraud. The goodwill of a business is intangible, being merely the expectation of continued public patronage (Revised Codes, sec. 4566); but nevertheless it is property capable of transfer (Revised Codes, sec. 4567), and the owner is entitled to the same protection in the exclusive enjoyment of it as he is in that of his tangible possessions. One competitor in the same business cannot so dress his goods or advertise them as to take away the trade reputation which another has established by a long course of honesty and fair dealing with the public. To permit this character of wrong would be tantamount to a declaration that for injuries to this species of property the law furnishes no redress. In *Croft* v. *Day,* 7 Beav. 88, it was said: "No man has a right to sell his own goods as the goods of another. You may express the same principle in a different form and say that no man has a right to dress himself in colors or adopt or bear symbols to which he has no exclusive or peculiar right, and thereby personate another person for the purpose of inducing the public to suppose either that he is that other person or that he is connected with or selling the manufacture of such other person, while he is really selling his own. * * * He [defendant] has a right to carry on the business of a blacking manufacturer honestly and fairly. He has a right to the use of his own name. I will not do anything to debar him from the use of that or any other name

calculated to benefit him in any honest way, but I must prevent him from using it in such a way as to deceive and defraud the public, and obtain for himself, at the expense of the plaintiffs, an undue and improper advantage."

It is not necessary that the designation used by the defendant should be identical with that used by the plaintiff. As was said by Mr. Justice Bradley, in *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. 94: "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say generally, that a similarity which would be likely to deceive or mislead any ordinary unsuspecting customer is obnoxious to the law."

In *Amoskeag Mfg. Co.* v. *Spear*, 2 Sand. (N. Y.) 599, Judge Duer stated the principle as follows: "In this case there is a fraud coupled with damage, and a court of equity in refusing to restrain the wrongdoer by an injunction, would violate the principle upon which a large portion of its jurisdiction is founded, and abjure its most important functions, the suppression of fraud and the prevention of a mischief that otherwise may prove to be irreparable."

In *Fox Co.* v. *Glynn*, 191 Mass. 344, 114 Am. St. Rep. 619, 78 N. E. 89, 9 L. R. A., n. s., 1096, the court said: "The foundation of the jurisdiction of the courts in these cases is the right of the plaintiff, who asks for relief from the frauds of those who seek to appropriate that which rightfully belongs to him. Such a fraud need not be an active fraud, in any other sense than in the willful refusal to recognize the right of the party, who has acquired a reputation for his goods, to have the benefit of the confidence which he has earned."

In *Coates* v. *Merrick Thread Co.*, 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847, in speaking of the right of a party to the exclusive use of a designation for goods manufactured by him, the supreme court of the United States said: "There can be no question of the soundness of the plaintiff's proposition that, irrespective of the technical question of trademark, the

defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents; but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals.''

Other cases recognizing the right of protection of the goodwill of a business are the following: *Wotherspoon* v. *Currie,* L. R. 5 H. L. 508; *Lee* v. *Haley,* L. R. 5 Ch. App. 155; *Thompson* v. *Montgomery,* 41 Ch. Div. 35; *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529, 50 Am. St. Rep. 57, 42 Pac. 142, 30 L. R. A. 182; *Pierce* v. *Guittard,* 68 Cal. 68, 58 Am. Rep. 1, 8 Pac. 645; *Glen & Hall Mfg. Co.* v. *Hall,* 61 N. Y. 226, 19 Am. Rep. 278; *Elgin Nat. Watch Co.* v. *Illinois Watch C. Co.,* 179 U. S. 665, 20 Sup. Ct. 270, 45 L. Ed. 365; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; *Howard* v. *Henrigues,* 3 Sand. (N. Y.) 725; *American Waltham Watch Co.* v. *United States Watch Co.,* 173 Mass. 85, 73 Am. St. Rep. 263, 53 N. E. 141, 43 L. R. A. 826; *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; *International Silver Co.* v. *Rogers Corp.,* 66 N. J. Eq. 119, 57 Atl. 1037, 2 Ann. Cas. 407; *Boardman* v. *Meriden Britannia Co.,* 35 Conn. 402, 95 Am. Dec. 270.

But it does not follow that the courts will protect one in the use of a name which others have an equal right to use, solely because he has chosen it as a designation for the wares in which he deals or the place of his business. It was observed in *Fox Co.* v. *Glynn, supra:* ''The practical difficulties which arise in such cases come from conflicting rights, where the plaintiff's right to use his chosen means of designation of his products is not exclusive. One way of designating articles of manufacture as coming from a particular maker is by a trademark. This, to be an effectual protection to one who has adopted and used it, must be something to which the user may have an

exclusive right. It, therefore, cannot be anything to the use of which, for a similar purpose, others may also have a right. The courts will not recognize trademarks which are not chosen in such a way as not to conflict with the rights of others to use common names and things, like the names of persons and places, and of colors and form with which all are familiar.'' So, if the designation in dispute has not by long use acquired a special or secondary meaning, due to its association with the products or business of the plaintiff, the use of it by the defendant is not obnoxious to the law. Men have a common right to compete with each other in the same business, at the same place or in any branch of trade or manufacture, or to bring the products in which they deal from the same locality, whether they be manufactured or are the natural products of the earth. Therefore, names which are generic or which are merely descriptive of an article of trade, of its qualities or characteristics, cannot be employed as trademarks or trade names. If this were so, the claimant would have a practical monopoly in the sale of goods other than those produced by himself. (*Canal Co.* v. *Clark,* 13 Wall. 311, 20 L. Ed. 581.)

In *Amoskeag Mfg. Co.* v. *Spear, supra,* it was said: ''The owner of an original trademark has an undoubted right to be protected in the exclusive use of all the marks, forms or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures or symbols, which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or symbol, which, from the nature of the fact which it is used to signify, others may employ with equal truth, and therefore have an equal right to employ, for the same purpose.'' After quoting this language with approval, Mr. Justice Strong, in *Canal Co.* v. *Clark,* speaking for the court said: ''And it is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured, and which can be employed with truth by other manufacturers,

apply with equal force to the appropriation of geographical names, designating districts of country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies. Could such phrases as 'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco,' or 'Sea Island cotton,' be protected as trademarks; could anyone prevent all others from using them, or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many. It can be permitted only when the reasons that lie at the foundation of the protection given to trademarks are entirely overlooked. It cannot be said that there is any attempt to deceive the public when one sells as Kentucky hemp, or as Lehigh coal, that which in truth is such, or that there is any attempt to appropriate the enterprise or business reputation of another who may have previously sold his goods with the same description. It is not selling one man's goods as and for those of another. Nothing is more common than that a manufacturer sends his products to market, designating them by the name of the place where they were made.'' Then, after distinguishing cases in which the exclusive right to the use of geographical names, as indicating ownership and origin by reason of a long association of manufactured articles with them and the secondary meaning which had thus become·attached to them, the court said further: ''It must then be considered as sound doctrine that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district, from truthfully using the same designation. It is only when the adoption or imitation of what is claimed to be a trademark amounts to a false representation, express or implied, designed or incidental, that there is any title to relief against

it. True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth." The question at issue was whether the plaintiff had the exclusive right to use the word "Lackawanna" as a designation of coal mined in the Lackawanna valley in Pennsylvania. The court held that the word "Lackawanna," being a mere geographical designation of the place or field in which Lackawanna coal was produced, could not be exclusively appropriated by one of several persons engaged in mining coal there and putting their product upon the market.

Again, in *Castner* v. *Coffman,* 178 U. S. 168, 20 Sup. Ct. 842, 44 L. Ed. 1021, it was held that the use of the name "Pocahontas Coal" by the selling agents for the owners of coal mined in the Pocahontas coal region did not create an exclusive right to apply that designation to the coal dealt in by them, nor deprive other owners of mines there of the right to use it. The principles declared by the court in *Canal Co.* v. *Clark, supra,* have been applied in many other cases (*Lawrence Mfg. Co.* v. *Tennessee Mfg. Co., supra; Goodyear* v. *Goodyear Rubber Co.,* 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; *Corbin* v. *Gould,* 133 U. S. 308, 10 Sup. Ct. 312, 33 L. Ed. 611; *Brown Chemical Co.* v. *Meyer,* 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247), and we think they are conclusive of this case.

The court found that the region in which the product of both of the parties in this case is mined is known as the Owl creek coal field; that the product offered for sale by both is truthfully designated as "Owl Creek Coal," and that, therefore, the designation "Owl Creek" does not point to the origin or ownership, but merely to the place whence the product is brought. It necessarily found that it had not by long association with

plaintiff's business acquired a peculiar or secondary meaning. It therefore correctly concluded and adjudged that the plaintiff is not entitled to relief.

The judgment is affirmed.

*Affirmed.*

Mr. Justice Holloway concurs.

Mr. Justice Smith: I cannot agree with my colleagues in the disposition made of this case, because I am of opinion that the question of the sufficiency of the evidence to justify a judgment for the defendant should be examined and determined. I think a specification of error to the effect that the court erred in rendering judgment ought to raise the question, in the absence of special findings, of the sufficiency of the evidence to justify the entry of judgment for the defendant. Of course, if there are special findings, a direct attack must be made upon them. In this case the defendant, not having tendered special findings, waived his right to restrict the inquiry in this regard.

Rehearing denied March 8, 1911.