ARIZONA COPPER ESTATE v. WATTS et al.*

(Circuit Court of Appeals, Ninth Circuit. December 4, 1916.)

No. 2663.

1. MORTGAGES ☞32(5)—VALIDITY—NECESSITY OF INDEBTEDNESS.

A debt, either pre-existing or created at the time, is an essential requisite to a mortgage; and a deed cannot be construed as a mortgage, where there was no indebtedness to be secured.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 61; Dec. Dig. ☞32(5).]

2. VENDOR AND PURCHASER ☞3(4)—OPTION CONTRACT—CONSTRUCTION—PAROL EVIDENCE.

The owners of a large tract of land desiring to sell the same, certain other persons undertook to effect a sale, and a price was agreed upon, which they were to pay if they succeeded. To facilitate the sale they organized a corporation, to which at their request the owners conveyed the land by a quitclaim deed. At the same time the corporation executed

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 13, 1917.

its notes for the agreed price, and also a reconveyance, to be void in case the notes were paid according to their tenor and effect. There was no agreement at any time for a sale of the land to the corporation, nor intention that it should pay the notes, unless it made a sale to others. It never paid anything on the notes, nor did any corporate act, and 15 years later grantees of the original owners brought suit against it to quiet their title and have the deed to it canceled as a cloud. It then set up ownership, claiming that the reconveyance was a mortgage to secure the purchase money. *Held*, that parol evidence was admissible to show the real transaction and intention of the parties, that a court of equity would construe all the instruments together in the light of such intention, which was merely to grant an option, and that defendant never acquired any interest in the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3; Dec. Dig. ⊜⟶3(4).]

Appeal from the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Suit in equity by Cornelius C. Watts and Dabney C. T. Davis, Jr., against the Arizona Copper Estate. Decree for complainants, and defendant appeals. Affirmed.

Mathews and Syme were the owners of 99,000 acres of land in Arizona, which they wished to sell. Through the intermediation of Col. Boyce as a broker, Syme met Senator Dorsey, a prospective purchaser. They first discussed an option, but Dorsey wished to obtain a deed to the property, because he thought he could use that better for the purpose of selling the land. It was finally agreed that the purchase price of the property should be $100,000, to be paid in installments running over two years, and that the property should be deeded to a corporation; but, as it was agreed that the sale was not to be made unless and until the price was paid, it was arranged that the corporation would reconvey the property to the owners, "subject to divestiture if the purchase price was paid as agreed." It was the testimony of all parties to the transaction that there was never an intention that, in case the corporation was unable to sell the land, it should be indebted to the payees of the note in any sum whatever. Syme testified that Dorsey wanted a deed, "because he said that he thought he could use that better, and he wanted to give me a deed in exchange at the same time." Dorsey explained that the deed would be of such a character that the property would be held by the owners, and the title in them, and not go out of them, and if the notes were not paid the whole property would be still in the owners. "Everything would be void, notes and all." Dorsey stated: "My understanding has always been and is now that the transaction, on account of the failure of the Arizona Copper Estate to make the payments agreed on, was as though it had never taken place, and that Mathews and Syme had the title to the property free of any claim on the part of those who had proposed to organize the corporation, or of the Arizona Copper Estate itself." Syme testified: "If all the notes weren't paid, the property was to remain in us, and the notes were to become void, and the whole thing wiped out." After this agreement was made, Mathews and Syme went to New York, and there, on August 3, 1899, met Dorsey, Reynolds, and Simmonds. The terms of the agreement were restated. A quitclaim deed was then executed on August 3, 1899, from Mathews and Syme to the Arizona Copper Estate. Simultaneously with the execution of the deed, an indenture was made between the Arizona Copper Estate, party of the first part, and Mathews and Syme, parties of the second part, the consideration whereof, as recited, was $10, and which conveyed to the parties of the second part the 99,000 acres of land. The indenture contained a recital of the execution of the notes and a description of the same, and provided that, "if said notes are paid according to their tenor and effect," then the indenture should be void, and the estate granted should cease and determine and be void, otherwise to remain in full force and effect, and it contained the recital that the party of the first part covenants with the parties of the second part

"that the party of the first part will pay the indebtedness as hereinbefore provided, and, if default be made in the payment of any part thereof, the said parties shall have power to sell the premises herein described according to law." On August 12, 1899, the indenture was recorded as a mortgage in Pima county, Ariz. On the same day the deed was recorded. No payment was ever made on the notes, and no foreclosure suit was ever brought upon the indenture which purports to have been given to secure the payment thereof. The Arizona Copper Estate never at any time took possession of said real estate, nor asserted ownership over the same. Fifteen years after the execution of the notes, Watts and Davis, who had acquired the interest of Mathews and Syme, brought this suit to quiet their title, alleging that the quitclaim deed and the indenture were made and recorded on the same day and hour, and were intended as a conditional sale, and were made to enable Boyce and his associates to raise in advance money with which to purchase the land for $100,000, with the understanding that the failure to do so in time to pay the notes would leave the title in Mathews and Syme, just as it was prior to the making of the deed, and avoid the transaction so far as said Arizona Copper Estate and Boyce and his associates were concerned; and the complaint alleged that the deed and the indenture constitute a cloud upon the plaintiffs' title. The complaint prayed that the conveyance from Mathews and Syme to the Arizona Copper Estate be declared a nullity, or that the deed from the Arizona Copper Estate to Mathews and Syme be declared to be a deed in fee with a condition subsequent, which condition never was complied with, and that the defendants be decreed to have no interest in the land. The Arizona Copper Estate admitted the execution of the deed to it, and alleged that the indenture was intended to be a purchase-money mortgage, and denied on information and belief nearly all the other allegations of the complaint. The court below found that the two instruments were to be construed as one, and that they constitute a conditional sale of the land; that the condition was not performed, and that no part of the purchase price was paid; that the Arizona Copper Estate acquired and has no right, title, or interest in the land; and the court adjudged that said instruments constitute a cloud on plaintiffs' title, that the cloud be removed, and that the plaintiffs' title be quieted.

J. N. Gillett and F. A. Cutler, both of San Francisco, Cal., Ben C. Hill, of Tucson, Ariz., and G. H. Brevillier, of New York City, for appellant.

Samuel L. Kingan, of Tucson, Ariz., and Hartwell P. Heath, of New York City (Herbert Noble, of New York City, and Samuel L. Kingan, of Tucson, Ariz., of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant contends that the intention and express agreement of the parties cannot be shown by parol to change the essential nature of the instruments, and that a conveyance to secure a debt is a mortgage, and the stipulation of the parties cannot make it otherwise. But there can be no mortgage unless there is a debt to be secured thereby. "A debt, either pre-existing or created at the time, is an essential requisite to a mortgage. When there is no debt and no loan, it is impossible to say that an agreement to resell will change an absolute deed into a mortgage." Jones on Mortgages, § 265. Here there was no debt. The relation of debtor and creditor did not exist. The undisputed evidence is that the appellant never at any time owed Syme and Mathews any sum whatever. It is true that the appellant signed promissory notes to the amount of $100,000; but they were not intended to be obligatory upon the maker, or ever to be paid unless the

appellant made a sale of the land. They were intended only to register the nature of the transaction, which, while it was in the contemplation of the parties only an option, was placed in the form of a deed to the appellant and notes and a mortgage from the appellant to the owners. In Daniels v. Lowery, 92 Ala. 519, 8 South. 352, the court said:

"In determining whether a particular transaction was a mortgage or a conditional sale, there are some facts which may be regarded as of controlling importance. Did the relation of debtor and creditor exist before and at the time of the transaction? Or did the transaction begin in a negotiation for the loan of money? Was there great disparity between the value of the property, and the consideration passing for it? It there a debt continuing for which the vendor is liable?"

[2] It is universally held that a deed absolute upon its face may by parol evidence be shown, as between the parties, to have been intended as a mortgage. The reason why such evidence is admissible, notwithstanding the statute of frauds, is that a court of equity will not construe a statute designed to prevent fraud in such a manner as to produce fraud. That reason applies in full force to the present case. Said the court in Peugh v. Davis, 96 U. S. 332, 336 (24 L. Ed. 775):

"The object of parties in such cases will be considered by a court of equity. It constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression, and to promote justice."

The appellant says there is no allegation here of fraud or mistake. But such allegations are unnecessary. When the appellant insists that the reconveyance is a mortgage, the fraud is established, and equity takes jurisdiction. 2 Pomeroy, Equity Juris. (2d Ed.) § 1196; Campbell v. Dearborn, 109 Mass. 130, 12 Am. Rep. 671. The contention of the appellant, if sustained here, would result in a monstrous fraud. The appellant was incorporated for the sole purpose of accomplishing the transactions which are evidenced by the instruments executed between the parties in the year 1899. From that time on it did no corporate act until after the commencement of the present suit. At that time it seems to have been resurrected and resuscitated sufficiently to make an answer to the complaint. In the meantime, if the indenture is to be held a mortgage, the statute of limitations has long since run thereon, and, according to the appellant's contention, it has acquired title to 99,000 acres of land without having paid a dollar therefor. Every consideration of justice and equity requires that the real intention of the parties be given effect. We find no error in the decree of the court below, which accomplished that result.

The decree is affirmed.