## Appeal of BERNARD LONG.          Docket No. 408.

> A deed absolute on its face will be held to be a mortgage only when the evidence to that effect is clear and convincing; and a deed will not be construed to be a mortgage where there is no indebtedness secured either preexisting or created at the time.   The evidence herein, *held*, to be insufficient to show that the deed in question was intended to be a mortgage.

Submitted February 10, 1925; decided March 17, 1925.

*Mark Eisner, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a determination of the Commissioner proposing to assess an additional tax for the years 1918 and 1919 against the taxpayer in the amount of $9,055.01, by reason of the denial of a deduction for a loss sustained on a sale of property and claimed to have been sustained in said years.   From the evidence introduced at the hearing the Board makes the following

FINDINGS OF FACT.

On or about September 30, 1916, the taxpayer herein, with others, as parties of the first part, made and entered into an agreement in

writing with the Luzerne County National Bank, of the City of Wilkes-Barre, Pa., wherein and whereby the parties of the first part agreed to sell to the bank certain real estate situated in said city for the sum of $88,750, which property the bank desired to obtain for the purpose of erecting thereon a banking house for its own use and occupancy. The property consisted of two contiguous lots upon which there were existing leases, one expiring on April 1, 1918, and the other expiring on April 1, 1919.

The contract provided that a deed for the property should be delivered to the bank and upon delivery thereof the bank was to pay to the grantors the sum of $25,000, upon which amount the grantors agreed to pay the bank interest at the rate of 4½ per cent per annum until delivery of possession of the entire premises on April 1, 1919. It was further agreed that upon delivery of the deed the bank should give to the grantors a mortgage for $63,750 upon the property described in the deed, payable April 1, 1919, without interest, as security for a bond conditioned for the payment of the amount named in the mortgage on said April 1, 1919, being the balance of the purchase price. The agreement further recited that, by reason of the existing leases, the grantors could not deliver possession of the premises, and it was agreed that possession of part should be delivered on April 1, 1918, and of the other part on April 1, 1919. The agreement recites that as the purchase price includes the amount agreed upon as the portion the bank may be called upon to contribute as owner toward the erection of a party wall built in accordance with the building code of the City of Wilkes-Barre on the dividing line between the land conveyed to the bank and other land, the grantors were to assume responsibility for the cost thereof.

All rentals upon the premises until delivery of possession were to belong to the grantors and all taxes to that time paid by the grantors. The bank, as mortgagor, was not to be required to carry any insurance nor pay premiums thereon for the protection of the grantors as mortgagees. It was provided that if the grantors could deliver possession prior to April 1, 1919, and the bank take entire possession thereof prior to that date, the bank would forthwith pay off its mortgage, and the taxes for the current year should be adjusted to that date, and the interest payable to the bank by the grantors should be payable only to that date.

Pursuant to said agreement, and during the year 1916, a deed was executed by the grantors and delivered to the bank, and the sum of $25,000, as part of the purchase price, was paid by the bank to grantors. Simultaneously with the delivery of said deed a mortgage was executed and delivered by the bank to the said grantors to secure the payment of the sum of $63,750, which said deed and mortgage were, during said year 1916, duly recorded in the proper office for the recording of transfers of real estate. Actual possession of the two parcels described in the contract was delivered to the bank in April, 1918, and April, 1919, respectively, and the taxpayer deducted as a loss in the respective years his proportionate share of the loss sustained on the sale of the property. The Commissioner held the transaction a closed one in the year 1916 and has disallowed the deduction in the years 1918 and 1919.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

MARQUETTE: The taxpayer herein bases his claim for relief upon the ground that the deed to the Luzerne County National Bank, although in form an absolute conveyance, was intended to be and was a mortgage, and that the title to the premises conveyed did not pass until the delivery of possession to the bank in the years 1918 and 1919. To support this conclusion he rests his case upon the terms and conditions of the contract with the bank for the sale of the property; that as the bank could not, under the provisions of section 5137 of the Revised Statutes of the United States, purchase, hold, or convey real estate, except such as shall be necessary for its immediate accommodation in the transaction of its business, the presumption that the intention was to obey the law should prevail and upon his own testimony presented at the hearing.

It is well settled that before a conveyance absolute in form may be regarded as a mortgage the evidence that it was so intended must be clear and convincing, the presumption being that the conveyance is what it purports to be. 3 Tiffany Real Property, 2d ed., 2386; 27 Cyc. 1025. The rule is stated in 19 R. C. L. 263, as follows:

> The authorities are unanimously agreed that the burden of proving that an absolute conveyance, unaccompanied by any written stipulation for reconveyance, was intended to operate as a mortgage rests on the party alleging that intention. Furthermore, evidence is not sufficient to establish such a conveyance to be a mere mortgage unless it is clear and unambiguous. It must be, according to the various statements, clear and convincing; clear and satisfactory; plain and convincing; clear, satisfactory, and conclusive; or clear, unequivocal, and convincing. It will not suffice if composed of loose and random statements, or of facts and circumstances of doubtful import; but it must be of such a character as not to leave the nature of the transaction in reasonable doubt, though there is apparently dissent as to the proposition last stated. The reason for the exaction of this high degree of proof is not far to seek. If a less rigorous rule obtains, no man would be safe in taking a deed of property. When it has doubled or trebled in value it would be only necessary for the grantor to bring witnesses to testify to an agreement that the deed was regarded as an equitable mortgage, to enable him, on payment of the purchase price and interest, to redeem.

We think the same high degree of proof should be required in matters of taxation, and that the evidence presented herein, aided by the presumption claimed to exist, is totally inadequate to establish the taxpayer's claim that the deed was intended to operate as a mortgage.

In the first place, in order that an absolute deed may operate as a mortgage, it is essential that an indebtedness on the part of the grantors to the grantee shall exist as a result of the transaction. In 3 Tiffany Real Property, 2d ed., 2387, it is said:

> In determining whether an absolute conveyance is a mortgage, the fact that an indebtedness on the part of the grantor to the grantee is created by the transaction, or that former indebtedness is thereby continued in force, is usually conclusive that it is a mortgage. And conversely, the fact that no indebtedness exists which the conveyance can be regarded as intended to secure, is conclusive that it is not a mortgage.

In *Arizona Copper Estate* v. *Watts*, 237 Fed. 585, the court said:

A debt, either pre-existing or created at the time, is an essential requisite to a mortgage; and a deed cannot be construed as a mortgage where there was no indebtedness to be secured.

See also to the same effect, 27 Cyc. 1008, and the long list of cases cited in 3 Tiffany Real Property, 2d ed., 2387.

We are unable to find anything in the record which convinces us that any indebtedness existed which the deed was intended to secure. It is true, the contract provided that the grantors should pay interest at the rate of 4½ per cent per annum on the amount paid by the bank at the time the deed was delivered; that the grantors were required to pay the taxes, and that the rentals belonged to the grantors until delivery of possession, all of which, without other evidence, might indicate a mortgage rather than an absolute conveyance. The bank was in a position where it desired to give the transaction the appearance of a loan and the payment of interest by the grantors on the initial payment for the purchase price gave it that color. There is nothing in the evidence which indicates any indebtedness to the bank for the amount of the initial payment, and the contract between the parties specifically provides for a payment of $25,000 on the purchase price at the time of delivery of the deed.

The only testimony produced other than the inferences to be drawn from the contract, that an indebtedness existed, was the statement of the taxpayer that the bank wanted something to show that it had paid the money—for security for the money. Nowhere does he state that it constituted a loan, but, on the contrary, testified that it constituted the initial payment for the purchase price.

We are of opinion the contract clearly sets forth the exact intention of the parties as to the nature of the transaction. The agreement was to sell for $88,750; the amount of $25,000 was to be paid at the time the deed was delivered, and the balance of $63,750, secured by a mortgage, payable when possession was delivered. For their own purposes, the grantors and the bank agreed that the rents should belong to the grantors until delivery of possession, and that they should pay the taxes and interest upon the advance payment until that time, and that the bank should pay no interest upon the mortgage to secure part of the purchase price. The transaction was carried out in exact conformity with the contract and, as we construe it, passed the absolute title to the property at the time the deed was delivered.

The taxpayer strenuously urges that the presumption that the parties do not intend to violate the law should control the determination as to what the intention of the parties was with respect to the passing of the title herein, upon the ground that it would be a violation of section 5137 Revised Statutes if the deed were held to be an absolute conveyance. While admitting the existence of the presumption of an intention to obey the law, such a presumption can not control positive evidence of intention as found in formal documents solemnly executed, and performed in accordance with their terms. A person's acts are the best evidence of his intentions and, in the face of the clear terms of the contract and the acts of the parties subsequent thereto in carrying out its terms, a finding that they intended something different would be opposed to the facts as they existed.

The provisions of section 5137 of the Revised Statutes have no controlling effect upon the decision herein. The prohibition therein that a bank may purchase and hold only such real estate as shall be necessary for its immediate accommodation in the transaction of its business does not serve to make a transaction in violation thereof void. In *Baker* v. *Schofield*, 221 Fed. 322, it was held:

That a purchase of real estate by a national bank was in violation of the national banking law and *ultra vires* does not render the transaction void, but voidable only, and its validity cannot be questioned by private parties, but only by the United States.

We hold it was the intention of the parties by their contract that the absolute title to the premises therein described should pass upon the delivery of the deed, and that the title thereto did pass at the time the deed was delivered in the year 1916. The determination of the Commissioner must therefore be approved.