F. GROOS & CO. v. C. G. BREWSTER.

Decided December 23, 1903.

**1.—Factors—Contract Construed—Unpaid Draft.**

Facts stated under which it is held that the assignee of certain drafts attached to bills of lading for corn shipped was liable to the consignee for the difference between the amount paid on such drafts and the amount which the corn brought at a sale thereof, it having been damaged in transit.

**2.—Same—Authority to Draw Draft.**

An instruction to a consignee to sell certain corn shipped and draw drafts for the difference between its billed price and the amount realized at such sale held to render liable for drafts drawn for such difference, although the sale had been already made at the date the instructions to sell were given and mailed.

**3.—Limitation of Four Years—Contract—Draft.**

Where a commission merchant sued to recover the difference between the price at which certain corn sold and the amount of drafts drawn by the shipper and attached to the bill of lading, the action was on a written obligation and so was within the four years statute of limitation.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

The opinion states the case.

*Webb & Goeth* and *Geo. C. Altgelt,* for appellants.

*Chas. W. Ogden, Terrell & Terrell,* and *W. H. Lipscomb,* for appellee.

NEILL, ASSOCIATE JUSTICE.—During the months of April, May and June, 1897, the J. L. S. Hunt Company, a private corporation, shipped to appellee at Laredo, Texas, on various days during that time, thirty-three carloads of corn, and drew its drafts for each carload, thirty-three in number, on appellee, payable to the order of said company with bills of lading attached, aggregating $9041.90. The drafts with bills of lading attached were then assigned and delivered by the J. L. S. Hunt Company to appellants, F. Groos & Co., partners, doing a banking business in the city of San Antonio, Texas, who by virtue of such assignment became the legal holders thereof.

The appellee, C. G. Brewster, was then a commission merchant doing business in Laredo, Texas, and had theretofore handled corn on commission for the Hunt Company. But at the time these shipments were made and drafts drawn, he had ceased to do business for said company. He had not purchased the corn or any part thereof, nor authorized its shipment or consignment to him, nor accepted or in any way obligated himself to pay said drafts, or any of them, or to receive said shipments of corn.

F. Groos & Co. transmitted the drafts with bills of lading attached to the Milmo National Bank at Laredo for collection. The appellee not having purchased, ordered or agreed to receive the corn, refused to accept or honor any of the drafts. Twenty-five carloads of the corn

having arrived at Laredo, were becoming heated and damaged, and appellee having refused to receive the shipments, which facts being made known to appellants, they on May 27, 1897, wrote to the Milmo National Bank:

"San Antonio, Texas, May 27, 1897.—Milmo National Bank, Laredo, Texas: Dear Sir.—A number of cars of corn covered by bills of lading attached to drafts on C. G. Brewster sent you at various times, having been sold at a reduced price from original figures, and in paying for said drafts Mr. Brewster is to draw on the J. L. S. Hunt Company for the difference of value of the corn, which said drafts you are hereby authorized to accept as part payment of such collections. Respectfully, F. Groos & Co."

When this letter was written, appellant knew that none of the cars of corn had been sold for less than the amounts drawn for or at any price. Their purpose in writing it was to authorize such sales and such returns therefor as the letter indicated. In view of these facts, their letter being shown by the Milmo Bank to appellee, it was construed by them to mean that Groos & Co. desired appellee to receive and sell the corn for them, and when sold, that he should draw drafts on the Hunt Company which they would accept in payment for the difference between amounts of original drafts on Brewster and what was realized from such sale. In view of the facts recited, which were known by appellants as well as by appellee and the Milmo National Bank, no other construction could have been placed upon the letters, i. e., if it was contemplated by the appellant that it should be acted upon at all. In carrying out such construction, the Milmo National Bank, acting for appellants, being unwilling to deliver the bills of lading to appellee, or allow the railroad company to deliver him the corn without his payment in full of the drafts attached thereto, arranged and agreed with him that he should first pay in full the several amounts for which the drafts were drawn; that the bills of lading should then be delivered to him, and he should receive the corn and after putting it in condition for sale, to sell the same for the best obtainable price, and should the proceeds of sale be less than the amounts for which the drafts were drawn, draw on the Hunt Company for the payment of the difference, it being understood from the letter that the drafts would be received by appellants for such payment.

In pursuance of such arrangement and understanding, the appellee paid the original drafts drawn on him by the Hunt Company to the Milmo National Bank, who held them for appellants, in full; and, when paid, the full amount of the payments were remitted by the bank to appellants. The bills of lading were then turned over to appellee, and he received the corn from the railroad company, placed it in condition for sale, at a considerable expense to him, and from time to time sold same for the best prices obtainable. And as soon as he received the proceeds of sale and was able to ascertain the difference between such proceeds and the amount he paid for the drafts, he drew drafts on the

Hunt Company payable to the order of the Milmo National Bank, with statements of sales attached thereto, for such difference, the sum of $1772.41 being the difference between the drafts drawn on appellee for the thirty-three carloads—the eight which arrived after, as well as the twenty-five which arrived before the 27th of May, 1897—and the entire amount realized from their sale. The drafts drawn by appellee for such difference were sent by the Milmo National Bank to its correspondent in San Antonio for collection. The Hunt Company, upon whom they were drawn, failed and refused to pay them. This company was then, as well as at the time it drew its drafts on appellee, which were assigned to appellant as aforesaid, wholly insolvent, such insolvency being, at all the times mentioned, well known to appellants. The insolvency of said company continued from such times and existed when this suit was filed, as well as when it was tried in the court below.

The Hunt Company having failed to pay the drafts drawn by appellee, as before stated, they were presented to appellants for payment and payment by them was refused, and they have never paid the amount or any part thereof for which said drafts were drawn.

The facts thus found are established by the uncontradicted testimony, and are not denied by appellants. They are substantially alleged by appellee in his petition as his cause of action.

That these facts constitute a cause of action in favor of appellee against appellants for the difference between the aggregate amount paid by the former on the drafts drawn on him by the Hunt Company prior to May 27, 1897, and the amount realized by him for the sale of the corn for which said drafts were drawn, good against appellants' general and special exceptions, is, to our minds, too clear for argument. This difference, as found by the verdict of the jury, is $1522.36, for which appellee obtained the judgment which is appealed from.

It would seem that there can be no question about this suit being founded upon an instrument or instruments of writing. Whether it be regarded as based upon the letter of May 27, 1897, or upon the drafts drawn by appellee, after the sale of the corn, on the Hunt Company, in either event it is founded upon a written obligation. The facts show a consideration inuring to appellants for the sums of money for which the drafts were drawn, and the letter referred to may be regarded as a promise by them to accept the drafts as payment for the difference between the aggregate amount paid by appellee on the drafts drawn on him prior to its date and the sum realized from the sales of the corn for which they were drawn. Therefore, the four years statute of limitations, and not the two, is the one which must govern in determining whether the action was barred when the suit was instituted, and it being brought within that period on the facts stated, it was not barred.

It must be borne in mind that the corn was never purchased by the appellee; that he never in fact owed either the Hunt Company or appellants anything for it; that he was under no obligation whatever to receive it or to accept or pay the drafts drawn on him for it; that what

he did was as a broker or commission merchant for the benefit of appellants and not for himself; that they received every dollar for which the drafts were drawn; paid by appellee before a bushel of the corn was sold, and that they were never entitled to receive from appellee or anyone else, save the Hunt Company, anything more than what was realized from the sales of the corn after it had been received by appellee as their broker. Therefore, the difference between what they received on the drafts from appellee and what the corn was sold for was that much more than they were entitled to. Independent of the letter, equity and good conscience would seem to require that appellants should make good to the appellee this difference.

It may be true that appellants did not know of the construction by the Milmo National Bank and appellee of the letter of May 27, 1897, or of the arrangement and understanding between them in regard to it. But if, in view of the facts, any other construction could have been given or action taken in regard to the matter, such construction and action was the most advantageous to appellants.

As was said by the Chief Justice of this court in an opinion in a case between these parties involving the same subject matter and facts:

"The letter was more than a mere authority that the drafts on the Hunt Company might be used as part payment of the original drafts. F. Groos & Co.'s object in writing, as stated by their cashier, was to authorize the sales for less than bill prices, and to authorize returns as therein indicated. It was therefore written to induce Brewster to take the corn, and evidenced an agreement on the part of F. Groos & Co. that only what the corn brought should be paid for by Brewster. Their evident purpose in requiring drafts to be drawn on the Hunt Company for the difference was to enable them thereby to settle with the Hunt Company on the basis of what was actually realized for the corn, and to protect themselves in respect to what they had overpaid the Hunt Company for the bills of lading and drafts bought by them. Had the Milmo National Bank retained the payments made by Brewster until the difference had been ascertained, and then undertaken to adjust matters by restoring him the amount of the difference, and taking for them drafts on the Hunt Company, and had remitted the same with the amount of the sales to F. Groos & Co., we think the latter could not have complained nor impeached the transaction, unless it was able to show that the departure from the direction, in not taking the drafts on the Hunt Company, at the time the original drafts were delivered, had prejudiced them in respect to their relations with the Hunt Company. The fact that the Milmo Bank remitted the full payment of the drafts to F. Groos & Co., as received, would not in any material respect, change the situation. * * * We do not think that the letter of May 27th made the taking of Brewster's drafts on the Hunt Company a condition precedent to his being allowed to pay for the corn only what it brought, or that by paying the drafts in full, and drawing drafts for the difference afterwards, the right was lost to him to pay only what it brought."

As is before shown by the facts, it was impossible at the time appellant paid the drafts to anticipate the difference between the amount for which they were drawn and what the corn would sell for. And the amount for which appellee might then have drawn on Hunt Company for such difference would have been merely suppository. If drawing then on the Hunt Company for such difference did not in any respect prejudice appellants, they can not complain of the drafts for such difference not having been drawn and presented until after the corn was sold, and the amount definitely ascertained. The question as to whether appellants were so prejudiced was by an appropriate charge submitted by the court to the jury, and they, upon evidence amply sufficient to sustain their verdict, found that they were in no way prejudiced.

While we have not discussed every assignment of error insisted upon by appellants in this case, we have carefully considered each of them and are of the opinion that none is well taken.

The appellee has filed a cross-assignment of error in which he complains of the court's limiting his recovery to the amount of the drafts drawn prior to May 27, 1897, and in denying his right to recover on the six drafts drawn on June 1, 1897. Under this assignment he insists that the proof as to the six cars sent after the letter of May 27, 1897, was written is identical with that as to the cars sent before that time, and that, therefore, the verdict of the jury is for all purposes a finding which would authorize us to render judgment here for them for the full amount of the difference in the thirty-three cars, and he asked that, in the event that we have such authority, we so render the judgment, but if we have not, that the judgment as it stands be affirmed. We do not believe, even if we should find the facts as insisted upon by appellee, that this court has any authority to render such judgment on the facts as is requested by appellant. Therefore the judgment of the district court is affirmed.

*Affirmed.*

Writ of error refused.