## COATES v. METCALF et al.

No. 1657 (81 Pac. 900).

COMMISSION MERCHANTS—CONSIGNMENT—EVIDENCE.—Evidence in an action by a commission merchant to recover advances in excess of the proceeds of sale on wool consigned to him through a third person *held* insufficient to sustain a finding that defendants did not consign the wool to plaintiff, and had no dealings with him.

(Decided July 11, 1905.)

APPEAL from District Court, Third District; T. D. Lewis, Judge.

29 Utah—14

Action by William M. Coates, doing business as Coates Bros. against James Metcalf and others. From an adverse judgment plaintiff appeals.

REVERSED.

*J. W. N. Whitecotton* for appellant.

*Rogers & Street* for respondents.

STRAUP, J.

1. This was an action brought by plaintiff for moneys advanced and paid for the use of defendants. It was alleged in the complaint that the defendants shipped and caused to be shipped from Utah to plaintiff, a commission merchant at Philadelphia, 30,000 pounds of wool, which was to be sold by him for the defendants; that plaintiff advanced to defendants the sum of $3,266.89, which defendants promised to repay, with legal interest, out of the proceeds of the sale; that plaintiff paid $606.19 freight charges; that one and one-half cents per pound for insurance, storage, and commission was reasonable; that, after deducting from the proceeds of sale said advances, charges, and commissions, it left defendants indebted to plaintiff in the sum of $454.08, which they declined to pay; hence the suit. A trial before the court resulted in its finding the issues for defendants, whereupon plaintiff appeals.

The court found that defendants did not at any time or at all ship or cause to be shipped to plaintiff any wool, and that he did not receive any from them to be sold as their agent, and that the plaintiff did not act in any transaction as agent for the defendants; that plaintiff did not advance defendants any money upon any wool; and that defendants did not agree to pay plaintiff any money whatever on account of any wool or any other transaction. Appellant contends that these findings have no support from the evidence, and are contrary to it. We are of opinion his contention is well taken.

The evidence is brief, and the transactions and dealings between the parties were as follows:

Metcalf was the owner, and Rytting a lessee, of a herd of sheep, and on July 27, 1900, they delivered to one Erickson their crop of wool, when the following writing was made:

> "This certifies that I have received this day from Jas. Metcalf of Salt Lake and Rytting of Grantsville, 104 bags of wool.
>
> Gross weight ...... ...... ...... 30,115
>
>                       416 Tare
>
>                    29,699 Net
>
> which I agree to consign to Coates Bros., Philadelphia, under the following conditions: I draw upon bill of lading 11 cents (eleven), my charges to be three and quarter cents (3 1-4) to cover Frt., Storage, Insurance and Commission and all other expenses, except Int. upon advance, and final returns and any moneys due on same to be returned to Deseret National Bank, Salt Lake City, Utah.
>
> [Signed]           ALBERT E. ERICKSON."

Erickson was buying wool and soliciting consignments. Metcalf (the only defendant served) says that Rytting telegraphed him that Erickson was at Colliston, and wanted them to consign their wool with him, and the result was that they did. He further says he understood at the time this transaction was had that this wool was to be shipped to Coates Bros., and to be sold by them, and that Erickson told him they would not sell it until they had instructions from defendants to do so. Plaintiff was notified of the shipment, and on August 4, 1900, wrote to Metcalf & Rytting:

> "We beg to acknowledge the receipt of Mr. A. S. Erickson, July 30th, advising shipment 104 sacks wool and draft 11c. per lb. for your account, which is duly noted. The wool will have our best attention on arrival. Yours truly, Coates Brothers."
>
> "Please advise us if you have any instructions in regard to selling and oblige, B. C."

When the wool arrived, it was weighed, opened, graded, and defendants notified. Plaintiff was notified that defendants did not wish to sell the wool till later. December 31, 1900, defendants wrote plaintiff:

"Have you sold our wool as yet; if not, what is the best price you can get for it now? Please answer as soon as possible to Jas. Metcalf, S. L. City, Utah. Yours truly, Metcalf & Rytting."

On January 4, 1901, plaintiff telegraphed defendants:

"Similar Wools offered at fourteen cents. Shall we try sell yours. Answer. Coates Brothers."

On January 5, 1901, plaintiff also wrote Metcalf:

"We have a letter from Messrs. Metcalf & Rytting of Dec. 31st, asking us to correspond with you as to what can be done with their wool. We state that at the time Mr. Albert Erickson shipped this wool for you, he advised us that you would not wish us to sell, but to hold the wool, and we have accordingly done so, and we regret that markets have declined considerably during this time, and that we have not heard before from you. We now have sample sacks out with parties who are buying these wools, and they intimate that they might buy more of them at fourteen cents, but we have not had that offer, although we know that others are offering to sell similar wool at this price. We therefore telegraphed you yesterday (as above set forth) but at this writing we have not received your reply. . . The advance that we have made on this wool is such that we must now ask for return of margin, and we suggest that you send us about two cents per lb., or say, about $600.00, to reduce the advances or, if you prefer, we will draw on you for the same. Hoping soon to hear from you, we remain, Yours truly, Coates Brothers."

On January 7, 1901, Metcalf wrote:

"Your telegram at hand. In reply will say I cannot take 14c. for my wool, at least not yet. You must try and get me more than that. That would not give me 12c. for my wool, and should not like to take that. James Metcalf."

On January 17, 1901, plaintiff wrote defendant Metcalf:

"In reply to our telegram of 4th inst. we duly received your letter of 7th, saying that you do not wish us to sell yet at fourteen. We have not had any better offer, but during the past few days we have had indication of better demand, and we hope that business may improve. We wrote you on the 5th inst., but have not had any reply to that letter, and as we therein asked that our advances be reduced about two cents per lb., we state, that we will accordingly draw on you for $600.00, but will not do so until Jan. 22nd, so that you can have plenty of notice of same. Coates Brothers."

On February 15th plaintiff wrote defendants:

"We wrote you on January 5th that we wished the advances on your wool reduced $600.00 and that we would draw on you for same. . . . And as we did not hear from you we accordingly made draft on that date (Jan. 22nd) which draft was returned to us to-day unpaid. As you wished the wool held when it was shipped, and you again wrote us Jan. 7th that you were not ready to accept market prices, and as markets have been continually declining, we cannot understand why you should wish us to hold the wool unless you keep your advances at a reasonable point. We therefore ask you to return our advances and take the wool away, which is the usual course to pursue when wool is situated as yours is, and if you do not wish to do this, it becomes our right to sell the wool if

we have opportunity to do so.    Just at present we
have no buyers for this stock and we do not know
when we will be able to sell.    We want to handle
the wool in accordance with your wishes, and have
done so up to this time, and you are of course re-
sponsible to us for any deficit there may be when
the wool is sold.    Please let us hear from you, and
if there is any way that this matter can be satisfac-
torily arranged we will be glad to know it.    Coates
Brothers."

Plaintiff, not receiving any reply from defendants, sold
the wool, and sent defendants a statement of the sale, and
final statement of their account.    On October 10, 1901, plain-
tiff wrote defendants:

"We ask your attention to the amount due us
454.08.    We think we have waited long enough
for you to make settlement of this claim, and if we
do not hear from you by return mail, we do not see
any other course than to forward the account to an
attorney for collection.    We will regret having to
do this, and trust you will make settlement without
further delay."

On November 20, 1901, plaintiff again wrote defendants:

"We have not had any reply to our last letter,
and in order to show our disposition to save trouble
and expense for both of us we make the following
proposition:    The amount due us is $454.08, but
if you will at once send us half of this amount we
will accept it in settlement, reserving the right to
collect the full amount due if this proposition is
not accepted at once.    Coates Brothers.".

Defendants made no reply to any of the later correspon-
dence.    From the time of taking said receipt or memorandum
from Erickson, defendants had nothing further to do with
him, had no further communication with him, and made no
demand upon him, nor he upon them.    The manner in which

the plaintiff handled the wool and disposed of the same, and as to his reasonable charges, for freight, storage, insurance, and commission, as testified to by him, is not questioned or disputed.

2. From this evidence, undisputed, we are clearly of the opinion that the wool was shipped or caused to be shipped to plaintiff, who was doing business as Coates Bros., as in the complaint alleged, and the relation of defendants, as principals, and plaintiff, their commission agent or factor, is clearly established, and, as such, the wool was consigned to him by them to the same extent and purpose as if they had shipped it direct to him, without the instrumentality of Erickson. The wool, when shipped, was marked and labeled, "Metcalf and Rytting Wool." To them plaintiff looked for instructions, and upon being advised of the shipment, immediately asked their instructions in regard to selling. To them he paid the advance. It was they who controlled plaintiffs action with respect to the wool. There is no evidence and it is not claimed that Erickson was the agent of Coates Bros., and that plaintiff is bound by the terms of the receipt given by him. It is not claimed that defendants' liability to pay freight, commission, insurance, and other charges is as by the said receipt expressed, or that the said charges of plaintiff are different from those expressed in said receipt. There being a total want of evidence that Erickson was the agent of plaintiff, or at all acting for him, such claims would be unsuccessful if made. What is claimed by defendants and found by the court is that the defendants did not ship any wool at all to plaintiff, had no dealings whatever with him either as agent or otherwise, made no promise to pay him anything, and were not at all liable to him for anything. It is quite evident from the correspondence that the parties considered the transaction a consignment to plaintiff. If defendant Metcalf understood the transaction otherwise, he did not deal with the plaintiff with that frankness and fairness demanded of him. He says he understood the wool was to be shipped to plaintiff, to be sold by him, and that plaintiff would not sell it until he had instructions from him to do so; and when

plaintiff wrote defendants of his advice of shipment of the wool and draft "for your account," and asked for instructions in regard to selling, they could not understand it otherwise than that plaintiff regarded them as his principals, and the consignment theirs. Still they say nothing then, as is now said, that they did not ship to or consign with plaintiff any wool, and consequently had no instructions to give, but reply not at all. They then had been or were about to be paid 11 cents per pound advanced on a draft drawn on plaintiff. In December they wrote plaintiff, "have you sold our wool as yet; if not what is the best price you can get now?" When informed that probably 14 cents per pound could be had, defendant Metcalf says: ". . . . cannot take 14c. . . You must try and get me more than that." Thereupon plaintiff wrote him of his advice from Erickson that they did not wish to sell when the shipment was made, and consequently held the wool in accordance with their wish, and asked for return of margin of $600. To this no reply is made. Upon defendants' declining to take 14 cents, the wool is still held. Plaintiff again writes for margin, saying he will draw on them on a certain day. Again they reply not. Accordingly a draft is drawn and presented, which is returned unpaid. Plaintiff writes, asking an explanation. None is made. Again defendants are informed that, unless margin is made good, he will sell to protect himself. Still no reply is made. Plaintiff sells, notifies them thereof, and sends statement of account showing balance due, and demands payment. No objection is made to the statement, and, when plaintiff thereafter several times demanded payment, no claim was then made that they did not owe the balance, nor was any reply at all made. The course of defendants' dealings is inconsistent with the claim now made, and found by the court, that defendants did not consign the wool to plaintiff, and had no dealings with him. If true, as defendants now say, that they did not consign the wool to plaintiff, they should have so spoken long before they did. They cannot be permitted to lie by and seize the benefit of the transaction if it proves to

be profitable, or, at their election, renounce it if it proves otherwise.

The judgment of the court below is reversed, and the case remanded for new trial. Appellant is given his costs.

BARTCH, C. J., and McCARTY, J., concur.