BRIDGES & CO., INC., APPELLANT, *v.* BANK OF FERGUS COUNTY, RESPONDENT.

(No. 6,042.)

(Submitted November 15, 1926. Decided December 6, 1926.)

[251 Pac. 1057.]

*Factors—Wool Consignments—Action for Commissions and Advancements—Evidence—Insufficiency—Contracts in Writing—Parol Testimony Rule.*

Appeal—Burden of Showing Error on Appellant—Judgment Upheld if Respondent Entitled to Prevail on Any Theory.
1.  The burden of showing error in a judgment rests upon appellant, and if upon any view of the case respondent was entitled to prevail, it will be affirmed.

Factors—Consignments of Wool-clips—Action to Recover Advancements and Commissions—Defendant Bank Acting as Go-between for Customers and Plaintiff—Nonliability.
2.  In an action to recover commissions and advancements on consignments of wool-clips, evidence *held* to support the findings of the court that the clips were not the property of defendant bank but that it acted in the premises as a go-between merely for the accommodation of a number of its customers and the plaintiff, and that plaintiff knew such to be the case.

Evidence—Written Contracts—Parol Testimony Rule.
3.  The parol testimony rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument sued upon; while its language cannot be qualified or varied from its natural import, the circumstances under which it was entered

---

1.  See 2 R. C. L. 159.
3.  See 10 R. C. L. 1039.

into and the real intention of the parties may be shown by parol to prevent either of the parties to it from committing a fraud on the other by claiming it to be what it in fact is not.

---

[1]  Appeal and Error, 4 C. J., sec. 2662, p. 731, n. 81; p. 733, n. 87.
[2]  Factors, 25 C. J., sec. 130, p. 407, n. 91.
[3]  Evidence, 22 C. J., sec. 1459, p. 1098, n. 96; sec. 1581, p. 1182, n. 73; sec. 1586, p. 1184, n. 86.

*Appeal from District Court, Fergus County; Edgar J. Baker, Judge.*

ACTION by S. W. Bridges & Co., Inc., against the Bank of Fergus County.  From a judgment for defendant plaintiff appeals.  Affirmed.

*Mr. Ralph J. Anderson,* for Appellant, submitted a brief and argued the cause orally.

The testimony of the officers and agents of the bank seeking to show that they were acting as agents merely, and not as principals in the transaction, was inadmissible and should not have been received or considered on the trial of this cause.

On the defense in this case, that was substantially all the testimony that defendant offered, namely, that the Bank of Fergus County was seeking to discharge itself from liability on Exhibits "A" and "B" by introducing parol evidence.  It being the contention of the bank that in the transaction in question they represented certain wool-growers as agent.

An agent may be bound by his contract where by apt words he binds himself by the very terms thereof, even though he represents a principal and even though the fact that he represents such principal is known to the third party to the contract.  (*McConnell* v. *Holderman,* 24 Okl. 129, 103 Pac. 593; *Hastings* v. *Lovering,* 2 Pick. (Mass.) 214, 13 Am. Dec. 420–424; *Simonds* v. *Heard,* 40 Mass. (23 Pick.) 120, 5 A. R. C. 541; *Dockarty* v. *Tillotson,* 64 Neb. 432, 89 N. W. 1050; *Stackpole* v. *Arnold,* 11 Mass. 27, 6 Am. Dec. 150, 5 A. R. C. 509.)  The rule of law is that where the intention of the parties can be determined from the written contracts, this intention gov-

erns, and parol evidence is inadmissible to prove a contrary intention. (*Western Pub. House* v. *Murdick*, 4 S. D. 207, 21 L. R. A. 671, 56 N. W. 120; *Stackpole* v. *Arnold*, 11 Mass. 27, 6 Am. Dec. 150, 5 A. R. C. 510; *Cox* v. *Bordstadt*, 49 Colo. 83, 111 Pac. 65.) Before parol evidence can be admissible to show that a person who signed the contract signed for and on behalf of some other person and thereby discharged himself· from the obligation accruing by reason of his execution of the contract, there must be an ambiguity on the face of the contract, and that ambiguity must consist of mentioning in some form or manner the name of the alleged principal in such conditions as to create a doubt in the mind of the court as to whether or not such alleged principal, or the person signing the contract is to be bound. In other words, an ambiguity, in order to entitle parol evidence to be admitted, must be apparent from the face of the contract and in that ambiguity must be involved the name of the person who the alleged agent claims was his principal. (*American Alkali Co.* v. *Bean*, 125 Fed. 823; *Meyer* v. *Redmond*, 205 N. Y. 478, 41 L. R. A. (n. s.) 677, 98 N. E. 906; *Lewis* v. *Weidenfeld*, 114 Mich. 581, 72 N. W. 604; *Ellis* v. *Stone*, 21 N. M. 730, L. R. A. 1916F, 1228, 158 Pac. 480; *Western Pub. House* v. *Murdick*, 4 S. D. 207, 21 L. R. A. 671, 56 N. W. 120; *Schauer* v. *Morgan*, 67 Mont. 455, 216 Pac. 347.)

Counsel for respondent take the position that parol evidence is admissible to show the purpose or object of the execution and delivery of the instrument, and will cite *McCaull-Dinsmore Co.* v. *Stevens*, 59 Mont. 206, 194 Pac. 213. In that case it will be observed that the supreme court was in doubt as to whether or not a contract was proved by the instrument offered in evidence, and it further appears that the instrument itself appeared to be .a confirmation of some preexisting oral contract.

It was contended below, and doubtless counsel will with zeal contend in this court, that parol evidence was admissible on

behalf of defendant because the defendant claimed the written instruments were only collaterally in issue. By the term ''collaterally in issue'' is meant an issue aside from the main question in the case. (11 C. J. 960.) And while the cases hold that the parol evidence rule does not apply where the instrument is only collaterally in issue, yet we submit that the instruments themselves were directly in issue in this case. The parties to this action were the parties to the instruments; the transaction in controversy was the subject matter of the instruments, and the only important question involved in the entire lawsuit, when reduced to the final analysis, is the question as to who was bound by these instruments in writing. Consequently, in view of these very self-evident and outstanding facts, we do not see how counsel can urge that the instruments sought to be varied by parol evidence were collaterally in issue.

The respondent in the court below took the position that this transaction was without the powers of the corporation, that it was an *ultra vires* transaction, and that, therefore, the contract could not be enforced. The authorities all agree that where a contract is executed upon the part of the parties seeking to enforce it, the corporation is estopped to assert or set up the claim of *ultra vires*. (14a C. J. 324.) And this is particularly true where the corporation has received the benefits of the transaction and has retained the same. (*Id.* 387; *Sherman Center Town Co.* v. *Morris*, 43 Kan. 282, 19 Am. St. Rep. 134, 23 Pac. 569.)

*Messrs. Belden & De Kalb* and *Mr. Merle C. Groene,* for Respondent, submitted a brief; *Mr. O. W. Belden* and *Mr. Groene* argued the cause orally.

''Where a writing is introduced for a collateral purpose, and not in an endeavor to enforce it, parol evidence is admissible to vary the terms of the written instrument.'' (9 Ency. of Evidence, p. 634.) In *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513, 70 Pac. 525, the court says: ''It has been held that, when

papers or documents are introduced collaterally in the trial of a cause, the purpose and object for which they are executed, and the reason why they were made in a particular form may be explained by parol evidence." (See, also, *Bank of the Metropolis* v. *Kennedy*, 17. Wall. (U. S.) 19, 21 L. Ed. 557; 22 C. J. 1282.)

In this case the contract sued upon cannot be sustained by proof alone of Exhibits "A" and "B." The contract is alleged to be a contract of consignment. The writings merely evidence an agreement to consign. Therefore, they do not contain all of the terms of the contract, and, we respectfully submit, the oral evidence offered comes squarely within the rule announced by this court in *Brokway* v. *Blair*, 53 Mont. 536, 165 Pac. 455; especially so when reference is had to the ambiguous character of these two exhibits.

"The authorities are quite generally in accord in holding that, where there is such ambiguity on the face of an instrument signed by corporate officers as to leave in doubt the question whether the signers meant to bind the principal only, parol evidence is admissible to disclose the circumstances under which the agreement was made, and the true nature of the transaction, in order to show in what character they acted." (*Schauer* v. *Morgan*, 67 Mont. 469, 216 Pac. 347; *Knippenberg* v. *Greenwood Min. etc. Co.*, 39 Mont. 19, 101 Pac. 159; *Commercial Nat. Bank* v. *Reichelt*, 62 Mont. 306, 204 Pac. 1037.)

The general rule is that parol evidence is not admissible to show that a person signing a contract was in reality signing as agent; yet where it is doubtful from the whole instrument who is to be bound, parol evidence is admissible to show whose obligation it is. (*Southern Pac. Co.* v. *Von Schmidt Dredge Co.*, 118 Cal. 368, 50 Pac. 655; *Eddy* v. *American Amusement Co.*, 9 Cal. App. 624, 99 Pac. 1115; *Ellis* v. *Stone*, 21 N. M. 730, L. R. A. 1916F, 1228, 158 Pac. 480.)

In the present case there are two written contracts, dated respectively August 2 and August 6, 1920, the first being

signed simply "Peter J. Osweiler, Agt.," and referring to the back thereof. The other contract is signed "Bank of Fergus County, by Bolton, Assistant Cashier." On the back of each of these contracts appear the names of the owners of the wool, the weights and the amount of advancements. In the case of *Deering* v. *Thom,* 29 Minn. 120, 12 N. W. 350, it was held that the word "agent" permits proof that it was the intention to bind the principal, and in volume 10, Ency. of Evidence, at page 42, the rule is laid down that a writing signed by a party with the word "agent" after the name is presumed to be the individual contract of the parties signing it, but parol evidence is admissible to show that it was, in effect, the contract of the principal. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. The general rule is that parol evidence is admissible to establish a fact collateral to a written instrument which controls its effect and operation as a binding agreement. (*McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 214, 194 Pac. 213; *Clark* v. *Talbott,* 72 W. Va. 46, 44 L. R. A. (n. s.) 731, 77 S. E. 523; *Southern Pac. Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368, 50 Pac. 651.) In order to establish its case against the bank, the plaintiff was compelled to and did offer oral evidence to explain the ambiguity of the instruments in question and by this plaintiff has waived the benefit of the rule excluding oral evidence. (*Brady* v. *Kern,* 222 Fed. 876, 138 C. C. A. 299; 22 C. J. 1295; *Hallenbeck* v. *Garst,* 96 Iowa, 509, 65 N. W. 417.)

Appellant seems to be of the opinion that respondent tried to assert an *ultra vires* contract at the trial. The record does not disclose such an attempt; furthermore, the pleadings would not sustain it. In order to admit an *ultra vires* contract, of necessity, the first prerequisite would be a contract by the bank.

What respondent did assert, and asserts here, is that proof of Exhibit "B," signed "Bank of Fergus County by D. B. Bolton, Ass't Cashier," standing alone is not proof of signature of the bank.

Appellant says that respondent received the benefits of the transaction, but this is not borne out by the record. The testimony shows conclusively that the bank owned no wool, received none of the money, but it was disbursed to the wool-growers in accordance with the instructions of appellant's agent, Patterson.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In this action, after trial before the court sitting without a jury, judgment was rendered in favor of defendant, from which plaintiff has appealed.

In plaintiff's complaint it is alleged in substance that in the month of August, 1920, the defendant consigned to the plaintiff certain wool-clips aggregating 92,457 pounds, in consideration of which the plaintiff advanced to the defendant $23,114.25, and the defendant agreed to pay plaintiff a commission of two and one-half cents per pound for selling the wool, and to repay the cash advanced with all necessary advancements which should be paid out by plaintiff in order to protect and care for the wool, with interest at eight per cent per annum; that the plaintiff made advancements for freight, insurance, cartage, drayage and labor, and for scouring wool, and that the advancements, with interest and commissions, exceeded the sum for which the wool was sold in the sum of $11,841.83; that plaintiff rendered an account of the sale of the wool-clips showing the indebtedness, and made demand for payment, but defendant failed, neglected and refused to pay the same or any part thereof except the sum of $577.31, paid on October 18, 1921. Hence plaintiff prayed judgment.

All of the foregoing allegations of the complaint were denied by the defendant except that it admitted plaintiff had rendered an account of sales of certain wool and had demanded that defendant pay plaintiff certain sums of money, which defendant had refused to pay. Thereupon defendant alleged the truth to be that on or about the months of July and August, 1920, one Patterson, "representing himself to be the agent of the plaintiff, for the consignment and sale of wool-clips in Fergus county, Montana, called upon the defendant and asked concerning the consignment and sale of wool-clips belonging to the customers of defendant bank"; that Patterson was advised that certain customers of the bank had their wool-clips stored in the Fergus County Wool Warehouse and elsewhere in Fergus county, and Patterson then and there well knew and understood that the wool-clips were not the property of the defendant but were the property of defendant's customers; that Patterson then negotiated for the consignment and sale of the wool-clips; that for the convenience of and at the request of plaintiff defendant allowed partial settlements for the clips to be made to it at its office in Lewistown, in its name, but with full knowledge and understanding on part of the plaintiff and the wool-growers that the defendant was acting merely as agent of the plaintiff and the customers to receive the money from plaintiff for distribution to the customers, and not otherwise; and that in so doing the defendant was acting as an intermediary only. The plaintiff by reply denied that defendant was acting as agent of the plaintiff and the customers of the bank in the handling of the wool-clips and alleged that the consignment of the wool-clips was negotiated with the bank and as the individual property of the bank.

To sustain its case the plaintiff offered in evidence the depositions of Mr. Patterson and three others. As a part of Patterson's testimony there were offered documents designated as Exhibits "A," "B," "C" and "D." Exhibit "A" is as follows:

"August 2, 1920.

"In consideration of Eighty-six Hundred Fifty-two 50/100 Dollars, to me in hand paid by S. W. Bridges & Co., Inc., the receipt whereof is hereby acknowledged, I do hereby agree to consign to them, for sale, my wool clip of 192——, from about ——— head of sheep, weighing about 34,610 pounds; which wool clip I warrant to deliver to S. W. Bridges & Co., Inc., or their representatives at Lewistown, in good merchantable order and condition, on or before ——— upon payment to me by them of a total advance payment against said consignment of 25 cents per pound with customary allowance for tags, and dead wool and fine bucks; it being understood that the sum of $8,652.50 already paid to me, is to be considered and taken as part of said advance payment.

"I agree to pay said S. W. Bridges & Co., Inc., 2½ cents commission for said sale, and current rates of interest·on all advances; also delivery charges from the point of shipment to the Boston Warehouse.

"PETER J. OSWEILER,

"Agt Cashir

"S. W. BRIDGES & Co., INC.

   "By JOHN R. PATTERSON.

      "See back hereof."

While the signature "Peter J. Osweiler" and "Agt" are written in ink, "Cashir" is written dimly in lead pencil; the evidence does not indicate who wrote it. On the back of Exhibit "A" appears the following:

"Norman Lot B 2..........................5113 lbs.
Minlschmidt Lot B 3......................3883 lbs.
Hamilton Lot B 4.........................8061 lbs.
Hogeland Lot B 5.........................6348 lbs.
Boe Lot B 6..............................9305 lbs.
Allyn Lot B 7............................1900 lbs.

                    34610"

Exhibit "B" is substantially the same as Exhibit "A" except that it is dated on August 6, 1920; the sum of money is $13,181; the number of pounds is 52,724. It is signed "Bank of Fergus County, by D. B. Bolton, Ass't Cashier." On the back of the instrument appear the names of seventeen persons. Each name is followed with figures and letters representing the amount of wool and the money advanced; for instance: Anderson & Mauland, 3304 lbs. $826.00.

Contemporaneously with the execution of Exhibits "A" and "B" Patterson delivered to the defendant drafts (designated Exhibits "C" and "D") upon S. W. Bridges & Co., Inc., at Boston, directing that concern on demand to pay to the order of the Bank of Fergus County the amounts called for, which are respectively $8,652.25 and $13,181. These were paid upon presentation to plaintiff.

In the view we take of the case it is unnecessary to discuss the objections, some serious, which counsel for defendant raised during the trial, and upon motion for a nonsuit, and now insist upon, against the maintenance of plaintiff's alleged cause of action.

The burden of showing error in the judgment rests upon the [1] plaintiff. If upon any view of the case the defendant was entitled to prevail the judgment must be affirmed.

At the trial each party charged the other with attempting to add to and to vary the terms of a written contract contrary to the provisions of sections 7520 and 10517, Revised Codes of 1921. For example, over defendant's objections plaintiff offered testimony to show that while Peter J. Osweiler signed Exhibit "A," designating himself as agent, in fact he signed the same as cashier of the bank and the bank and not himself was the real party in interest; also that defendant's agents agreed orally to repay advances; likewise to show the custom at Boston respecting the advancement of money by consignees to pay freight, drayage, storage, insurance and the like upon consigned wool-clips. The court received the testimony, reserving rulings as to its admissibility, and pursued the same

course with respect to the testimony offered by defendant, which was received over plaintiff's objections.

It is not necessary to pass upon defendant's objections to plaintiff's proffered testimony. We are satisfied the evidence offered by the defendant comes within the well-supported rule announced by this court in *McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206, 194 Pac. 213.

Defendant's proof is quite sufficient to sustain findings to [2]  the effect that plaintiff knew the wool-clips which were consigned to it were not the property of defendant but were the property of defendant's customers and that the defendant, for the accommodation of plaintiff as well as the customers, acted as a mere go-between.

At the threshold of the transactions which eventually resulted in this lawsuit Patterson, plaintiff's agent, called at defendant bank saying his company was in a position to advance twenty-five cents per pound on growers' wools, and he desired to be introduced by the bank's officers to customers of the bank or others who might have wool for sale or consignment. In response Mr. Belden, president of the bank, told Mr. Patterson that certain customers of the bank had not as yet sold or consigned their wool so far as he knew, the wool at that time being stored in the Fergus County Wool Warehouse. The two then went to the warehouse where the wool was found, sacked, with the name or brand of the grower and the weight of each sack marked in paint thereon. Mr. Belden told Mr. Patterson that the wool belonged to the bank's customers. Belden and Patterson had been acquainted for years and Patterson treated the bank as his headquarters. Mr. Miller, who described himself as the field agent of the bank, testified that at the request of Mr. Osweiler, the cashier, he conveyed Patterson by automobile to see a number of wool-growers. Patterson endeavored to get consignments of wool from these men. One was Mr. Sibbert, whose name appears upon Exhibit "B." Patterson told Sibbert his firm was "taking consignments of wool and advancing twenty-five cents." Thereafter

Mr. Patterson requested Mr. Osweiler to receive the draft for $8,652.25, Exhibit "C," for his (Patterson's) convenience, saying: "I would much prefer to give one draft than to split it up into so many settlements." Exhibit "A" was not signed until after the draft was delivered to Osweiler. This instrument, said Osweiler, was signed at Patterson's request. Patterson told him it was necessary "to have one of these instruments to report to the house." Osweiler did not understand that either the bank or himself was consigning any wool and he did not deliver any wool to plaintiff, either as cashier or individually. The bank did not own any wool. He acted, he said, as agent for Patterson in making settlements and in some cases for the wool-growers. Osweiler paid the proceeds of the draft to the. growers, according to the memorandum on the back of Exhibit "A," in accordance with the weights furnished by Patterson. Exhibit "B" was signed by Mr. Bolton, assistant cashier of the bank. This document, with the draft for $13,181, was presented to Bolton on August 6, just a little before train time. Osweiler was absent at the time. Bolton testified: "I took the draft from Mr. Patterson and I asked Mr. Patterson at the time why these papers had to be signed by the bank, or if they were to be signed by the bank, and he said, 'Yes, just put the stamp on it.' I was familiar with the transaction in a way but I was not familiar with how I was signing it. I knew what the transaction was. I knew that the bank was simply acting as a clearing-house, distributing the proceeds of the draft which he handed to me. I knew the proceeds were to be delivered to the parties as the names were shown."

The proceeds of the draft were disbursed to the different parties shown on the back of Exhibit "B." The bank did not receive any compensation from either the plaintiff or its customers for its service in the matter.

Shortly before leaving Lewistown, Patterson told Osweiler he expected to receive the Buffalo Ranch Company's wool but he did not want to wait any longer, and when the weights were

delivered at the bank to draw on the plaintiff for the twenty-five cents advance. Upon August 14, accordingly, Osweiler wrote to plaintiff a letter in which he said: "We are to-day drawing draft on you for $1,280.75 to cover a 25¢ advance on the wool of the Buffalo Ranch Company. This is in accordance with instructions left with us by Mr. J. R. Patterson. We are enclosing railway bill covering weights on the wool." The draft was honored and the proceeds were delivered to the Buffalo Ranch Company.

All of the witnesses for defendant who were interrogated upon the subject testified that there never was an agreement on the part of the bank to repay any advances made by the plaintiff. The subsequent actions of the parties have illuminating features. There was testimony showing that the plaintiff had correspondence directly with one of the wool-growers, Mr. Allyn, with respect to a sale of a portion of the wool consigned, which defendant claims tends to show that plaintiff recognized that the wool was consigned by Allyn and not by defendant.

When it became evident that the wool would not sell for a sum sufficient to cover the amounts advanced, plaintiff on November 24, 1920, wrote defendant, saying in part: "Owing to the depressed condition of the wool market we feel obliged to ask you to reduce the margin which we advanced against the wool you have consigned to us." Upon December 3 defendant dispatched a telegram requesting plaintiff to send a list of customers who had consigned wool to plaintiff. The next day plaintiff by its vice-president, who conducted most of the correspondence between plaintiff and defendant, wrote the defendant a letter which reads in part as follows: "Your telegram of the 3rd inst. is at hand and carefully noted. We annex herewith a list of customers who consigned wool to us through your bank." The list inclosed included the names of those appearing upon the backs of Exhibits "A" and "B," with possibly one exception, and included Buffalo Ranch Company. On December 27, 1920, plaintiff requested defendant to sign a note. In answer defendant said: "We have your letter of

December 27, enclosing note for $13,100 at ninety days cover-
ing a refund on moneys advanced on wool consigned in the
name of the Bank of Fergus County by customers of the
bank," and then went on to say the bank would procure
the notes of the wool-growers covering the amount and forward
the same as early as possible. "By consulting with your Mr.
Patterson, you will find that for consigning and handling these
wools were bunched and consigned in the name of the bank,
and the bank does not feel that it is liable on the contract as
the matter was arranged in accordance with the wishes of Mr
Patterson, simply to facilitate the matter of shipping, *etc.*"
In conclusion defendant assured plaintiff that the notes would
be "perfectly good."

On April 13, 1921, Mr. Belden wrote plaintiff, saying: "We
are submitting herewith a list of the securities which the Bank
of Fergus County has taken in your interest to protect you
against loss on certain wool consignments on which you made
advances in 1920. These notes are all dated on January 15th,
1921, and all mature on April 15th, 1921, and each is made
payable to the order of S. W. Bridges & Co., Inc., bearing
interest from date at the rate of eight per cent per annum":
and then follow the names of seventeen wool-growers with the
amounts of the notes set opposite their names. Plaintiff ig-
nored this letter.

On October 18, 1921, defendant sent plaintiff a draft for
$577.31, "covering the amount due you from Anderson &
Mauland and from J. M. Allyn $205.19." The plaintiff cred-
ited this amount upon defendant's account.

The trial court was warranted in holding, in effect, that
the plaintiff knew the defendant was not the owner of the wool
consigned, was not bound to deliver it, was not entitled to the
money advanced upon it; that the defendant at plaintiff's re-
quest and without compensation acted merely as a go-between
for the mutual benefit of plaintiff and its own customers.

In *McCaull-Dinsmore Co. v. Stevens, supra,* this court held
[3]   that parol evidence was admissible to show that the con-

tract there under consideration was delivered to plaintiff's agent for a purpose other than that for which the plaintiff was attempting to make use of it—as the basis of an action. In that respect the situation is identical with the one here presented.

Defendant's evidence was competent, relevant, material and did not infringe the parol evidence rule. We quote again from *Peugh* v. *Davis,* 96 U. S. 332, 24 L. Ed. 776 [see, also, Rose's U. S. Notes] : "The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." (*McCaull-Dinsmore Co., supra; Barkemeyer Grain & Seed Co.* v. *Hannant,* 66 Mont. 120, 213 Pac. 208.)

The face of an instrument is not always conclusive of its purpose. The rule regards the circumstances of the parties and executes their real intention, and prevents either of the parties to the instrument from committing a fraud on the other by claiming it to be what it in fact is not. In other words, the real transaction may be proved. (*Cabrera* v. *American Colonial Bank,* 214 U. S. 224, 53 L. Ed. 974, 29 Sup. Ct. Rep. 623 [see, also, Rose's U. S. Notes] ; *Western Underwriting & Mortgage Co.* v. *Valley Bank of Phoenix,* 237 Fed. 45; *Arizona Copper Estate* v. *Watts,* 237 Fed. 585.) To permit the plaintiff to recover upon the facts found by the trial court upon competent evidence would permit the perpetration of a gross injustice.

The judgment is right and is affirmed.

*Affirmed.*

JUSTICES GALEN, STARK and MATTHEWS and HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.