BOWLES LIVESTOCK COMMISSION CO., Appellant, v.
MIDLAND NATIONAL BANK, Respondent.

(No. 7,068.)

(Submitted May 26, 1933. Decided June 14, 1933.)

[23 Pac. (2d) 967.]

*Messrs. Brown, Wiggenhorn & Davis,* for Appellant, submitted an original and a reply brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

*Messrs. Wood & Cooke,* for Respondent, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiff corporation brought this action, for money had and received, against the defendant bank. The complaint was in three counts, each based on the same facts. At the close of the plaintiff's case, on motion of the defendant, plain-

tiff elected to rely on the third count, which stated the facts more in detail than any of the other counts. The defendant, by its amended answer to each of the counts, admitted the receipt of the money and its refusal to repay on demand. The defendant further affirmatively pleaded certain facts unnecessary to relate here, as they later appear sufficiently. The case was tried by stipulation of counsel before the court without a jury, and judgment was rendered for the defendant. No findings of fact or conclusions of law were made.

The plaintiff was a livestock commission firm in Chicago, handling livestock upon commission. Late in December, 1929, and early in January following, one Foulkes, president of the American Sheep Company, a corporation, engaged in the livestock business at Billings, communicated with plaintiff relative to the securing of an advance on lambs to be shipped. The exact scope of this arrangement is unimportant here. These lambs were mortgaged to the defendant bank. On January 14 the American Sheep Company wired the plaintiff, requesting it to telegraph defendant confirming a telephone conversation with reference to the payment of the advances to be made by it. Plaintiff, complying with the request, wired the defendant that it would honor the draft of the American Sheep Company for four or five loads of lambs at 12 cents per pound, less $1.50 per head invoice, and copy of railroad contract showing lambs billed to plaintiff to reach it prior to draft. The defendant received the telegram, but gave the matter no attention until January 28 following, on which date the lambs were delivered to the railway company for shipment and a bill of lading issued to the American Sheep Company and the defendant, at which time the bill of lading was indorsed, "Deliver to Bowles Livestock Com. Co., American Sheep Co., Inc., L. E. Merrick, Secy. The Midland National Bank, Billings, Montana, By E. O. Jenkins, Vice President."

The amount of the draft was computed in accordance with the telegram of January 14, and it was drawn accordingly in the following form:

"Customer's Draft.

"The Midland National Bank 93–30.

"Billings, Montana, Jan. 28, 1930.

"At sight pay to the order of The Midland National Bank of Billings, Montana, $11,598.90, Eleven thousand, five hundred ninety-eight and 90/100 Dollars, with exchange

"Value received and charge to account of

"AMERICAN SHEEP Co., INC.

"L. E. MERRICK, Secy.

"To Bowles Livestock Comm. Co.,

"Union Stock Yards, Chicago, Illinois."

On the same date the president of defendant bank advised plaintiff by mail of the shipment of the lambs and requested that plaintiff honor the draft promptly. The draft was presented to plaintiff through a correspondent bank of the defendant in Chicago, to whom it was paid by plaintiff. Defendant in turn gave credit for the amount of the draft on the indebtedness of the American Sheep Company secured by chattel mortgage on the lambs. The amount so applied left a substantial balance owing by the American Sheep Company to the defendant. As to whether this remaining indebtedness was secured in whole or in part, the record is silent.

The president of the defendant bank testified on the trial that he knew the lambs were being shipped for the purpose of being in turn sold by plaintiff as a commission house, their profit being the commission they could derive by the transaction. The purpose, as testified to by the officers of the defendant bank, in having its name appear on the bill of lading was to advise the consignee of its interest in the property by reason of their chattel mortgage.

On February 11 defendant wrote to plaintiff as follows:

"O. B. Parham, c/o Bowles Livestock Commission Company, Chicago, Illinois:

"Dear O. B.: Foulkes tells me that he talked to you this morning relative to the five loads of lambs shipped by the American Sheep Company and the two and one-half loads

shipped by Sinton and that two loads will be on the market today, two more Thursday and then the balance moved out daily thereafter, in other words, the entire lot should be sold within the week. I trust that will be done. As Foulkes informed you, we are the parties interested in the proceeds. The sheep are mortgaged to us.

"Yours very truly,

"ELROY H. WESTBROOK, President."

Plaintiff in response to the above letter on February 14 following telegraphed defendant:

"Midland National Bank, Billings, Mont.

"Letter and wire just received Double and single old ewes only sold the way I understood last conversation with Foulkes lambs were to be given ten days or two weeks feed as are only feeders would probably bring around ten and quarter if you wish sold without further feed please wire.

"BOWLES LIVESTOCK COMM. CO."

Defendant on February 20 telegraphed plaintiff as follows:

"Bowles Livestock Commission Co.

"Attention Mr. Parham.

"Kindly move all sheep not yet sold under the two drafts recently drawn to market at earliest possible moment advising by wire net receipts when this has been done.

"MIDLAND NATIONAL BANK."

The Sinton sheep referred to in the letter of February 11 was another shipment not concerned with this transaction but in which the defendant was interested, having a chattel mortgage on the same. The additional draft mentioned in the telegram of February 20 was in connection with the Sinton shipment.

The price suggested in the telegram of February 14 was insufficient to pay the amount of the advance made by the draft. Plaintiff in accordance with the instructions sold the lambs and advised defendant of the results of the sale on February 21. The lambs brought a somewhat better price than was predicted by plaintiff, but nevertheless after deducting

the freight and other necessary expenses of the transaction—about which there is no controversy—the amount of the draft paid by plaintiff as an advance exceeded the net returns of the sale by $2,217.08, which is the amount which plaintiff sought to recover in this action. The plaintiff insisted that in making the advance it understood that the lambs were to be fat lambs and as such would have brought a better price on the market, and that it was their advice to continue feeding them at Montgomery, Illinois, where they were being fed at the time the peremptory order of the defendant to sell them was received.

One of the officers of the defendant bank testified that the reason for sending the telegram of February 20 was that Foulkes, the managing head of the American Sheep Company, was ill, but with whom he consulted, and that Foulkes was of the opinion that in view of the trend of the market downward, the lambs should be sold without delay.

Plaintiff specifies numerous errors of the trial court in the admission of evidence, but the chief error on which it relies is "the court erred in entering judgment for the defendant and denying plaintiff the relief prayed for." Defendant urges with considerable vigor that the specification of error is insufficient, relying, so far as the authorities of this court are concerned, principally upon the case of *Esselstyn* v. *Holmes*, 42 Mont. 507, 114 Pac. 118. The majority opinion in that case holds a somewhat similar specification of error to be insufficient. It will be noted, however, that in the *Holmes Case* the court made general findings, and in the instant case it merely rendered judgment. The judgment does not even contain a recital to the effect that the court finds the issue in favor of the prevailing party. It is noteworthy that the case of *Esselstyn* v. *Holmes*, supra, has never been cited by this court in any subsequent opinion rendered as an authority either upon the question under discussion, or any other. The court, however, in the case of *In re Bright's Estate*, 89 Mont. 394, 300 Pac. 229, held that under a similar

specification of error the question was raised as to whether or not the record contained substantial evidence to support the judgment. That is the situation here. The specification of error herein is sufficient to raise the question of the sufficiency of the evidence to support the judgment.

The plaintiff in selling the lambs and making the advance was a factor. (Sec. 7805, Rev. Codes 1921.) A factor has the right to be reimbursed by his principal for all advances and disbursements made in good faith in the course of his employment for such principal, and the prinicpal may be held personally liable therefor. (2 Clark & Skyles on Agency, 1821; 25 C. J. 383; 11 R. C. L. 773.) There is a division among the authorities as to whether the factor may hold his principal personally liable before the property consigned is sold. It is unnecessary in this case to consider this troublesome question, as no attempt was made to enforce liability until after the sale of the property consigned.

As we view this case, the important question for determination is: Was the defendant a principal of the plaintiff in this transaction?

The defendant urges in support of the judgment that the draft was voluntarily paid, and hence appellant is without right to recover any portion of the payment. Numerous authorities are cited in defendant's brief in support of its contention, all of which doubtless state correct principles of law applicable to the facts therein considered. The cases relied upon relate to the payment of a subsisting note or account. The payment under consideration in those cases extinguished an existing obligation. Payment, as used in the usual legal sense, means "the satisfaction and discharge of an obligation in money or its equivalent." (*Square Butte State Bank* v. *Ballard*, 64 Mont. 554, 210 Pac. 889.) At the time plaintiff honored the draft there was no obligation owing by it either to the American Sheep Company or the defendant, which the delivery of the money to defendant's correspondent bank could operate to extinguish. It is sometimes said that money is paid when in fact it is meant that it is delivered or

transferred from one to another. The authorities relied upon by defendant use the word "payment" in the usual legal sense, and not in the loose or careless meaning of the word referred to above.

Defendant further insists that the draft was a written negotiable instrument, and parol evidence was inadmissible to vary the terms of the contract embodied therein. This court in the case of *Bridges & Co., Inc.*, v. *Bank of Fergus County*, 77 Mont. 524, 251 Pac. 1057, had under consideration the admissibility of parol evidence to show that the drawer of drafts, who also executed consignment agreements as the consignor, was not in fact the principal in an action brought to recover the resulting overdraft, after the application of the proceeds of the sale of the consigned property to advances made by a factor. The parol evidence was held to be admissible, and the court, quoting from *Peugh* v. *Davis*, 96 U. S. 332, 24 L. Ed. 775, said: "The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." This action is not on the draft and against the parties thereto as such; but it is upon the implied promise to reimburse, and for money paid and for their use. (*Hidden* v. *Waldo*, 55 N. Y. 294.)

Defendant further asserts that the judgment must be sustained because plaintiff in its third cause of action pleaded a custom on which it relied and which it failed to prove. True, the plaintiff so alleged. The action being upon an implied contract, it was unnecessary for plaintiff, if it became necessary to prove custom, to allege it. (17 C. J. 518; *Fish* v. *Crawford Mfg. Co.*, 120 Mich. 500, 79 N. W. 793; *Harrison* v. *Birrell*, 58 Or. 410, 115 Pac. 141.) Hence the allegation was surplusage and need not be proved unless it was essential to the establishment of a cause of action on the implied contract. (*Hoskins* v. *Northern Pacific Ry. Co.*, 39

Mont. 394, 102 Pac. 988.) The plaintiff was entitled to recover in this case independent of any proof of custom, provided the relation of factor and principal existed between it and the defendant; for if such relation existed, the advance having been made, the defendant in accepting the proceeds of the draft impliedly promised to repay the plaintiff any overdraft existent after the sale of the property consigned.

The defendant, as mortgagee of the lambs, was the owner of an interest therein. Defendant advised plaintiff of its ownership. It insisted that its name appear in the bill of lading to protect its rights. It received the advances and was unwilling that the lambs should be consigned until arrangements were perfected whereby it would receive the advances and overplus, if any, arising on the sale. Defendant gave directions for the sale of the property against the advice of the plaintiff and with the knowledge that an overdraft was likely to occur before it so acted. Plaintiff, in selling the lambs, acted in obedience to the command of the defendant. After the shipment of the lambs, plaintiff's conduct was directed throughout the entire transaction by the defendant alone. Defendant cannot be permitted to lie by and receive the benefit of the transaction if it proves to be profitable, or at its election repudiate it if it proves otherwise.

We, therefore, conclude that under the undisputed evidence in the record, defendant was a principal; and in this transaction plaintiff is entitled to recover in accordance with the prayer of the complaint. (*United States Nat. Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084; compare *Coates* v. *Metcalf,* 29 Utah, 209, 81 Pac. 900; *Groos & Co.* v. *Brewster,* 34 Tex. Civ. App. 140, 78 S. W. 359.)

It is therefore ordered that the judgment be reversed and the cause remanded, with directions to the trial court to enter judgment for plaintiff and against the defendant in accordance with the prayer of its complaint.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied July 19, 1933.